HARMON *v.* OLD DETROIT NATIONAL BANK.

1. BANKS AND BANKING—PAYMENT OF FORGED PAPER—FICTITIOUS
PAYEE.

Where, in an action by the receiver of a railroad company against
a bank to recover money paid by defendant out of the funds
of the company on a forged warrant, plaintiff showed that a
trusted employé of the company erased or caused to be erased,
with the aid of others, the name of the real payee and sub-
stituted the name of another, who was either a fictitious per-
son or a real one unknown to the drawer, a prima facie case
of a fictitious payee was made out.[1]

2. SAME—DEPOSITS—ACCOUNTING—BURDEN OF PROOF.

As between a depositor and a bank, the burden of proving pay-
ment by a valid check or other voucher is upon the bank.

3. SAME—PAYMENT OF FORGED PAPER—FICTITIOUS PAYEE—PAY-
MENT THROUGH OTHER BANK.

Where a bank pays a forged check, or one upon which the
name of a fictitious payee has been fraudulently substituted,
the fact that the check came to the paying bank through
other banks does not relieve it of the duty of investigation to
determine the identity of the original presenter with the
payee named in the check, and if the paying bank chooses to
rely upon the identification accepted by the bank which
cashed the check, it does so at its own risk.

4. SAME—FICTITIOUS PAYEE—STATUTE—APPLICATION.

·Section 4870, 2 Comp. Laws, making checks drawn in favor of
fictitious payees payable to bearer, has application only to
cases in which the drawer knowingly draws the check to the
order of a fictitious payee, and hence does not apply to a case
where a trusted employé of a railroad company fraudulently
erased the name of the proper payee in a valid warrant and
substituted the name of a fictitious person.

5. SAME—FORGED PAPER—DUTY OF PAYING BANK.

Where, after a proper voucher and warrant issued at Detroit
by a railroad company had been approved by the necessary
officers, a trusted employé fraudulently caused the name of

---

[1] As to who must bear loss where check or bill is issued or in-
dorsed to imposter, see note to *Land Title & T. Co.* v. *Northwestern
Nat. Bank* (Pa.), 50 L. R. A. 75.

the proper payee to be erased and one unknown to the maker substituted, and the warrant in due course of business was mailed to the address of the substituted payee in Chicago, and by someone cashed in Denver, the drawee was not relieved of the duty of using due diligence in identifying the payee, since such duty is not changed by the time or place of the forgery, unless the forgery was committed under such circumstances as to show negligence on the part of the drawer.

6. SAME—BURDEN OF PROOF.

Where a warrant issued by a railroad company, payable at a bank in Detroit, was fraudulently altered, after approval, by the substitution, by a trusted employé of the railroad company, of the name of another person, or a fictitious person, as payee, and the warrant was, in the due course of business, mailed to the address given of the fraudulent payee in Chicago, and cashed by a bank in Denver, and subsequently received through several banks and paid by the drawee, the burden was upon the drawee, as between it and the drawer, to show the existence or non-existence of the substituted payee, and that the Denver bank took the proper means to identify him.

7. FORGERY — WHAT CONSTITUTES — INDORSEMENT IN NAME OF FICTITIOUS PAYEE.

Where, through the fraud of a trusted employé, a railroad company issued a warrant naming a fictitious payee, an indorsement of the name of such fictitious payee for the purpose of cashing the warrant was a forgery.

Error to Wayne; Donovan, J. Submitted April 16, 1908. (Docket No. 95.) Decided May 26, 1908.

Assumpsit by Judson Harmon, receiver of the Pere Marquette Railroad Company, against the Old Detroit National Bank for money had and received. There was judgment for defendant, and plaintiff brings error. Reversed.

*Stevens, McPherson & Bills*, for appellant.

*Henry A. Harmon* (*Harrison Geer*, of counsel), for appellee.

The defendant was one of the general depositaries of the Pere Marquette Railroad Company. The funds on deposit were paid out upon warrants issued by the company. Its method of doing business with the bank will appear from the following statement of facts:

In May, 1905, the railroad company was indebted to the Sunday Creek Coal Company in the sum of $2,097.38. Its purchasing agent prepared a voucher-warrant for payment. This document was prepared on a printed blank. The first page of the document, called the warrant, constituted the check or warrant of the treasurer of the company on the bank. The warrant, as prepared by the purchasing agent, reads as follows:

"PERE MARQUETTE RAILROAD COMPANY
"To the Sunday Creek Coal Co.,        Dr.
(Pay W. N. Cott, Treas.), Columbus, O.
"Made 5 / 31 / '05          Dept. No. 6706, April.
"For coal per attached statement _____$2,097.38."

Below this were blanks for the signatures of the auditor of disbursements, comptroller, and treasurer, and for the signature of the payee upon presentation at the bank. Above the auditor's signature is the following:

"I certify that this warrant is in accordance with an account approved by the proper officer and duly audited."

Above the comptroller's signature are the words: "Approved for payment." Above the treasurer's signature is the following:

"Will pay this warrant when properly dated and receipted if presented within 60 days from date stamped hereon."

All the above except the receipt of the payee appeared upon a carbon page called the voucher. Instead thereof there were blanks in which to show the manner in which the amount paid should be charged upon the books of the railroad company.

The purchasing agent and his clerk who prepared the papers signed their names upon the voucher, and then

the original warrant and voucher, with a statement of the coal to be paid for and original invoices thereof attached, were sent to the general manager for his approval. The general manager approved the payment by signing the voucher, and forwarded the papers to the president, who also approved the payment by signing the voucher, and then forwarded the papers to the auditor of disbursements. In the office of the auditor of disbursements, the papers passed through the hands of several clerks, each of whom had some particular duty to perform in relation to them, in verifying the computations, entering the transaction upon the books of the company, etc. Before the warrant had been signed by the auditor of disbursements, Edwin Murdock, one of the clerks in his office, fraudulently took the papers out of the office and sent them to Chicago, where the name and address of the payee named in the voucher was changed from "The Sunday Creek Coal Co., Pay W. N. Cott, Treas., Columbus, O.," to "The G. E. Fairbanks Coal Co., Pay G. E. Fairbanks, Treas., 407 Able Bldg., Cor. 63 St., Stewart Ave., Chicago, Ill.," and the statements attached to the vouchers were changed in the same manner. The altered papers were returned by mail to the office of the auditor of disbursements, where a new warrant was prepared. This new warrant was made payable to "The G. E. Fairbanks Coal Co." to accord with the altered voucher; and when some further entries in relation to the transaction had been made, the papers were, in the regular course of business, laid before the chief clerk of the auditor of disbursements for his approval. The new warrant above mentioned was signed by the auditor of disbursements without any knowledge or suspicion that the name of the payee had been changed after the voucher had been signed by the purchasing agent, general manager, and president of the company. The warrant was then sent to the treasurer of the company, who signed it and mailed it to the payee at Chicago, at the address shown in it.

The indorsement stamped upon the warrant by the dif-

ferent banks through which it passed indicate that the warrant was cashed by someone at a Denver bank, forwarded by that bank to a bank in Chicago, which forwarded it to the American Exchange National Bank of Detroit, which collected the amount of the warrant from the defendant bank through the Detroit clearing house after an indorsement by the American Exchange National Bank of a guaranty of prior indorsements. This is all the light we have upon the history of the warrant from the time it left the office of the railroad company's treasurer.

The railroad company had no contract with the G. E. Fairbanks Coal Company; never had any dealings with such a company; had never heard of the existence of such a company, and had no coal contract with anyone in Chicago.

The warrant came to the defendant in the usual course of business and was paid. This suit is brought to recover the amount paid on the warrant on the ground that it was a forgery.

The plaintiff requested the court to direct a verdict in his favor. This was refused, and the case submitted to the jury upon the theory that the railroad company was negligent in making and issuing the warrant, and that where one of two parties must suffer, the loss must be borne by the one whose negligence caused it. The jury rendered a verdict of no cause of action.

GRANT, C. J. ( *after stating the facts* ). The facts in this case are not in dispute, and are sufficiently above stated. The conclusion to be drawn from them is that a trusted employé of the railroad company erased or caused to be erased, with the aid of others, the name of the real payee and the substitution of another payee, and thus caused to be issued a forged warrant or voucher. The payee in the forged instrument was either a fictitious person or a real one unknown to the drawer. The plaintiff made a prima facie case of a fictitious payee. The defendant introduced no evidence that the payee was a real

entity.  The record is barren of any evidence tending to show to whom the payment was made by the bank in Denver, Colorado, or under what circumstances it was paid.  All that the record shows is that it was cashed in the Denver bank, and reached the drawee, the defendant, through other banks and was paid by it on July 1, 1905.

As between the depositor and the bank, the burden of proving payment by valid check or other voucher is upon the bank.  No citation of authority is needed that he who receives money of another must account for its payment. As between the plaintiff and the defendant, the question is, Upon whom must the loss fall?  There is no claim of bad faith on the part of either.  The facts being conceded, the question is one of law.

Plaintiff contends that the fraud or negligence of plaintiff's employé does not relieve the bank of its burden of proving that payment was made to the payee named in the warrant.  Defendant insists that the officers of the company were negligent in not ascertaining that the voucher was forged; that it exercised due care in honoring it, bearing as it did the genuine signatures of the officers of the company.  If the payee named in this voucher, the G. E. Fairbanks Coal Company, Pay G. E. Fairbanks, treasurer, had been presented to the defendant by one claiming to be G. E. Fairbanks, the treasurer of the Fairbanks Coal Company, would the defendant have been protected in payment without any investigation to determine the identity of the presenter with the payee named in the warrant?  It seems to us clear that it would not.  The same rule must apply when the warrant or check is presented to it, coming through other banks.  If the drawee chooses to rely upon the identification by the bank which cashed the check, it does so at its own risk, and its recourse is upon that or some intermediate bank.  If the G. E. Fairbanks Coal Company was a fictitious payee the bank cannot defend under the statute (2 Comp. Laws, § 4870) that the check was payable to bearer.  That statute applies only to cases where the drawer knowingly

draws the check to the order of a fictitious payee. *Armstrong* v. *National Bank,* 46 Ohio St. 512; *Shipman* v. *Bank of New York,* 126 N. Y. 318; *Hatton* v. *Holmes,* 97 Cal. 208; *Chism, Churchill & Co.* v. *National Bank,* 96 Tenn. 649; *Murphy* v. *National Bank,* 191 Mass. 159; 2 Bolles on Modern Law of Banking, p. 716; 7 Cyc. p. 564.

In *Shipman* v. *Bank of New York,* it is said:

" We are of the opinion, upon examination of the authorities cited by counsel on both sides, that this rule applies only to paper put into circulation by the maker with knowledge that the name of the payee does not represent a real person. The maker's intention is the controlling consideration which determines the character of such paper. It cannot be treated as payable to bearer unless the maker knows the payee to be fictitious and actually intends to make the paper payable to a fictitious person," citing authorities.

There are authorities to the contrary in this country, but the clear weight of authority in both England and the United States is in favor of this rule. If this warrant had been changed so as to make it a forged instrument after it had been issued by the railroad company, under all the authorities the defendant would not have been justified in paying the forged instrument. The time and place of the forgery are immaterial, unless the forgery was committed under such circumstances as to show negligence on the part of the drawer. But the drawee's duty to use due diligence in identifying the payee of the check or warrant is not changed by the time and place of the forgery. This is not the case of *U. S.* v. *Exchange Bank,* 45 Fed. 163. In that case the drawer of the check, the postmaster, went with the fraudulent payee to the bank and identified him as the payee named in the check. In that case the fault was, of course, with the drawer and not with the drawee. To render that case applicable to this, it should have appeared that the proper officer of the railroad company went to the bank and identified the payee.

It was held in *Robarts* v. *Tucker,* 16 Q. B. 560:

"That a banker cannot debit his customer with the payment made to one who claims, through a forged indorsement and so cannot give a valid discharge for the bill; unless there be circumstances amounting to a direction from the customer to the bankers to pay the bill without reference to the genuineness of the indorsement, or equivalent to an admission of its genuineness, inducing the banker to alter his position, so as to preclude the customer from showing it to be forged."

It is held in *Murphy* v. *National Bank*, supra:

"The ordinary rule is well established that a banker, on whom a check is drawn, must ascertain at his peril the identity of the person named in it as payee. It is only when he is misled by some negligence or other fault of the drawer, that he can set up his own mistake in this particular against the drawer," citing authorities.

In this case the defendant took no precautions before paying the warrant to ascertain the identity of the payee. It did not show that it paid the warrant to the payee named therein. It evidently relied upon the identification made by the bank in Denver, Colorado, where the warrant was cashed, and whether that bank took the requisite precaution we do not know. It would naturally excite suspicion that a check, drawn in Detroit, payable to a corporation in Chicago, on a bank in Detroit, should be presented to a bank in the distant city of Denver. It was clearly the duty of the Denver bank to take proper means to assure itself that it was paid to the proper party; in other words, to take proper means to identify the payee. 2 Morse on Banks and Banking (4th Ed.), § 466 (b); *Ellis & Morton* v. *Trust Co.*, 4 Ohio St. 628. The court in that case said:

"Where negligence reaches beyond the holder and necessarily affects the drawee, and consists of an omission to exercise some precaution, either by the agreement of the parties or the course of business devolved upon the holder, in relation to the genuineness of the paper, he cannot, in negligent disregard of this duty, retain the money received upon a forged instrument."

The negligence of the Denver bank is imputable to the defendant.

In *Graves* v. *American Exchange Bank*, 17 N. Y. 205, a draft was sent payable to order of Charles F. Graves. It reached a person in the same place by the same name, and by him was indorsed and paid by the drawee. It was held that the payment, although made in good faith, did not divest or impair the title to the true owner who had not seen or indorsed the paper. It was held in fact to be a forged indorsement.

It was held in *Third Nat. Bank* v. *Merchants' Nat. Bank*, 76 Hun (N. Y.), 475, that it is the signature of the payee that transfers title to a check; that the signature of another person by the same name as the one to whom it was drawn, is just as much a forgery as if the names had been different. It is the signature of the payee that transfers title to the check. A similar holding is in *Indiana Nat. Bank* v. *Holtsclaw*, 98 Ind. 85.

It was held in *First Nat. Bank of Chicago* v. *Pease*, 168 Ill. 40, that the fact that the drawer of a check delivers it to a party representing himself as the payee's agent, without investigating the alleged agent's authority, is not such negligence as will relieve the bank from liability for the payment of the check on a forged indorsement of the payee's name by the alleged agent.

If the payee named in the paid warrant was a fictitious person, the indorsement in the name of such fictitious party is in effect a forgery. *Hatton* v. *Holmes*, supra. If the G. E. Fairbanks Coal Company, and G. E. Fairbanks, treasurer, were fictitious parties, the indorsement was a forgery. If they were real parties the indorsement by any other without authority would be a forged indorsement and would not excuse defendant's payment. It was incumbent upon it to show the existence or nonexistence of such a payee, and that the Denver bank took the proper means to identify the payee. It failed to sustain this burden, and therefore the verdict and judgment are set aside and a new trial ordered.

BLAIR, MONTGOMERY, CARPENTER, and McALVAY, JJ., concurred.