UNITED STATES v. NATIONAL BANK OF COMMERCE OF SEATTLE, WASH.

(Circuit Court of Appeals, Ninth Circuit.   May 19, 1913.)

No. 2,190.

1. BANKS AND BANKING (§ 148*)—UNITED STATES DEPOSITARIES—FORGED CHECKS.

Where a national bank which was a United States depositary paid certain forged checks drawn by a disbursing agent of the government, and on demand by the government for repayment unconditionally refused to return the money, and made no demand for the checks nor offer to pay on condition that the checks be returned, a tender of the checks to the bank was not a condition precedent to the right of the government to recover the money.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 438–446, 451, 452; Dec. Dig. § 148.*]

2. LIMITATION OF ACTIONS (§ 66*)—CHECKS—FORGED INDORSEMENTS—PAYMENT—RECOVERY OF MONEY.

Where a bank on which certain checks with forged indorsements were drawn paid the same relying on the validity of such indorsements, the bank's right of action against the banks through which it received the checks arose immediately on payment thereof.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 353–375; Dec. Dig. § 66;* Banks and Banking, Cent. Dig. § 505.]

3. BANKS AND BANKING (§ 148*)—FORGED CHECKS—PAYMENT—NEGLIGENCE—ESTOPPEL.

Where defendant bank which was a United States depository paid certain checks drawn by a government disbursing agent on which indorsements by fictitious payees had been forged, but defendant and the banks through which it received the checks were both negligent in failing to discover the forgery and in not requiring identification of the payees, defendant could not urge in defense of its liability to refund the money to the government that it was negligent in failing promptly to discover the fraud.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 438–446, 451, 452; Dec. Dig. § 148.*]

4. BANKS AND BANKING (§ 148*)—CHECKS—DUTY TO PAY—FORGERIES.

Where a bank holds money of a depositor, subject to check, it is bound to pay any valid check of the depositor, but it cannot charge against the depositor's account money paid on a forged check or on a check to which the bank has obtained title by a forged indorsement.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 438–446, 451, 452; Dec. Dig. § 148.*]

5. BILLS AND NOTES (§ 340*)—CHECKS—INDORSEMENT—FORGED SIGNATURE OF PAYEE.

Where checks were drawn by a government disbursing agent, the government was not chargeable with knowledge of the signatures of the payees of the checks, so as to charge it with notice that they were forgeries.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 825–828, 842–848; Dec. Dig. § 340.*]

6. BANKS AND BANKING (§ 138*)—CHECKS—PAYMENT—DUTY OF BANK.

Where government checks drawn by a disbursing agent are presented to the drawee bank for payment, it is the bank's duty to ascertain whether there is such a person as the payee named in the checks and to know

that the person presenting the checks is entitled to receive payment; and, if payment is made without investigation, identification, or other precaution, it is at the bank's risk.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 398–405; Dec. Dig. § 138.*]

7. BANKS AND BANKING (§ 148*)—GOVERNMENT MONEY—FEDERAL DEPOSITARIES—UNITED STATES DISBURSING AGENTS—AUTHORITY—NOTICE TO BANK.

Rev. St. § 5153 (U. S. Comp. St. 1901, p. 3465), provides that all national banking associations designated for that purpose shall be depositaries of public money under such regulations as may be prescribed by the Secretary of the Treasury, and Treasury Department Circular No. 49, § 6, provides that if the object or purpose for which a check of a public disbursing officer is drawn is not stated thereon, or if any reason exists for suspecting fraud, the officer or bank on which the check is drawn shall refuse payment. Department Circular No. 102 declares that any check drawn by a disbursing officer on moneys thus deposited must be in favor of the party by name to whom payment is to be made and payable to order with certain exceptions. Held that, where a national bank was a federal depositary and checks of a disbursing agent were drawn on it, the bank was chargeable with notice of the limitations of the agent's authority to check out the money deposited, and that checks drawn by him on such fund payable to the fictitious payee could not be regarded as valid checks on the fund payable to the bearer.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 438–446, 451, 452; Dec. Dig. § 148.*]

8. UNITED STATES (§ 40*)—EXPENDITURE OF FUNDS—DISBURSING AGENT—FRAUD—NOTICE TO GOVERNMENT.

Where a federal disbursing agent having authority to draw checks on a government deposit for a specified purpose drew checks to fictitious payees, and then by forged indorsements procured the proceeds by depositing the checks in other banks, such agent acted in fraud of his principal, and the United States was therefore not charged with his knowledge.

[Ed. Note.—For other cases, see United States, Cent. Dig. § 29; Dec. Dig. § 40.*]

In Error to District Court of the United States for the Northern Division of the Western District of Washington; C. H. Hanford, Judge.

Action by the United States against the National Bank of Commerce of Seattle, Wash. Judgment for defendant, and the United States brings error. Reversed and remanded for new trial.

M. P. McCoy was an examiner of public surveys and special disbursing agent of the United States, with headquarters at Seattle. His duties required him to run over one in every ten of the lines established by surveyors of public lands in certain states under government contracts in order to check up their work. To pay for his expenses in so doing moneys to his credit were deposited from time to time with the defendant, a national depositary. McCoy was authorized to use the money only for the purpose of paying such expenses. When he made a payment, he was required to give the payee a check for the amount and to take his signature to a voucher therefor. Each week he sent a report to the government, covering his work, and each quarter he submitted an expense account to which were attached the vouchers, and coincident with these reports the defendant bank sent to Washington the canceled checks included in the quarterly account. McCoy, instead of doing the work on the surveys in 1907, 1908, and part of 1909, falsified his reports to the government, and made fraudulent checks purporting to pay for work which was not performed. He forged vouchers for the

amounts of the checks in the names of fictitious persons, made the checks payable to the same names, forged the names of the fictitious payees to the indorsements of the checks, and deposited the checks in other banks to the credit of the fictitious payees. He assumed two fictitious names. Under the name of J. G. King he opened accounts with the Columbia Valley Bank of Washington and the Montana National Bank of Montana by correspondence, sending the checks to those banks by mail. With the Seattle National Bank he opened an account under the name of F. M. Clark, and he went personally to the bank for that purpose. None of the banks required that the payee named in the checks be identified. Those banks forwarded the forged checks to the defendant, and the defendant paid them. McCoy obtained the money out of these other banks by forging checks in the fictitious names of the depositors therein.

In September, 1909, a special agent of the government discovered these frauds. At that time the fraudulent checks for the months of July and August, 1909, were still in the possession of the defendant. The special agent obtained those checks from the defendant, notified it that they were all fraudulent, gave it a history of the transactions, and returned the checks to it. On March 4, 1910, the district attorney of the United States for the Western District of Washington demanded of the defendant the repayment of $15,129.81, according to an attached list of the checks and their description. The defendant inspected the checks, but refused to pay the money. To the complaint which was filed to recover judgment for that sum the defendant answered, setting up two affirmative defenses. The substance of the second was that the deposit with the defendant was made in the usual and ordinary manner, and it was not the bank's duty to inquire as to the name of payees of McCoy's checks; that the checks bore his genuine signature; that the bank rendered monthly statements showing the amount of each check, both to the government and to McCoy, and that no complaint of the payment of the checks reached the bank until March 5, 1910; that it was the plaintiff's duty to examine the account and promptly notify the defendant of the forgeries; and that by its failure so to do, within a reasonable time, the plaintiff was barred and estopped from bringing the action. The plaintiff demurred to this affirmative defense, and the demurrer was overruled. The defendant in an amended answer added to that defense the allegation that by reason of the failure of the government to notify the bank of McCoy's fraud, within a reasonable time, it had lost its right against the various banks through which the checks had been forwarded for payment. At the close of the plaintiff's testimony, the trial court granted a nonsuit on the ground that a return to the bank of the fraudulent checks was a condition precedent to the plaintiff's cause of action.

B. W. Coiner, U. S. Atty., of Tacoma, Wash., and C. F. Riddell, Asst. U. S. Atty., of Seattle, Wash.

James A. Kerr and Evan S. McCord, both of Seattle, Wash., for defendant in error.

Before GILBERT and MORROW, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1] We are unable to sustain the judgment of nonsuit on the ground that a tender of the checks to the defendant was a necessary preliminary to the commencement of the action, or to assent to the proposition that the possession of those checks by the defendant was necessary in order to enable it to maintain actions against the banks through which it received the same. The defendant made no demand for the checks, and made no offer to pay the money due the government on condition that the checks be returned to it. Its refusal to pay was absolute and unconditional.

[2] Its cause of action against the banks through which it received the checks with the forged indorsements arose immediately upon its payment thereof. Said the court in Leather Manf. Bank v. Merchants' Bank, 128 U. S. 26–35, 9 Sup. Ct. 3, 4 (32 L. Ed. 342):

"One who by presenting forged paper to a bank procures the payment of the amount thereof to him, even if he makes no express warranty, in law represents that the paper is genuine, and, if the payment is made in ignorance of the forgery, is liable to an action by the bank to recover back the money which in equity and good conscience has never ceased to be its property. * * * There is no consideration for the payment, and the money remains, in equity and good conscience, the property of the payer, and may be recovered back by him, without any previous demand, as money had and received to his use. His right of action accrues, and the statute of limitations begins to run immediately upon the payment."

The language so quoted was approved in United States v. Nat. Exchange Bank, 214 U. S. 302, 29 Sup. Ct. 665, 53 L. Ed. 1006, 16 Ann. Cas. 1184. In United States v. National Park Bank of N. Y. (D. C.) 6 Fed. 852, a case in which the defendant had collected from the United States the amount of a draft which it had received from another bank for collection, and upon which draft the payee's name had been forged, the court said:

"I think there was no obligation on the part of the plaintiff to surrender or tender to the defendant upon the trial this draft. The possession of it was not necessary to a recovery over."

In a similar case, United States v. Onondaga County Sav. Bank (D. C.) 39 Fed. 259, in an opinion by Judge Coxe, which was commended by the Supreme Court in United States v. Nat. Exchange Bank, 214 U. S. 319, 29 Sup. Ct. 665, 53 L. Ed. 1006, 16 Ann. Cas. 1184, it was said:

"The refusal to surrender the drafts after the defendants had agreed to repay the money was perhaps ill advised and discourteous, but the defendants lost no advantage by reason thereof. There was no legal obligation to return the drafts. The defendants had a right of action against the conspirators independent of the drafts."

The decision in that case was affirmed by the Circuit Court of Appeals in Onondaga County Sav. Bank v. United States, 64 Fed. 703, 12 C. C. A. 407, in which the court said:

"The refusal of the defendant in error to return the drafts has in no way prejudiced the plaintiff in error, or deprived it of any remedy against those who defrauded it."

[3] It remains to be considered whether the judgment of nonsuit was sustainable upon any other ground. The defendant contends that it may be sustained on the ground of the plaintiff's negligence in not discovering the frauds of McCoy sooner than it did. But the defendant having been negligent, and the negligence of the banks through which it received the checks being imputable to it, it is in no position to urge the negligence of the government as a defense to the action. In the absence of knowledge to the contrary, the government had the right to rely upon the assumption that the defendant as the depositary of public money would do its duty, and there was nothing in the

case to indicate that its reliance was misplaced until it discovered Mc-
Coy's frauds.

[4] Where a bank holds money of a depositor subject to check, it
can be required to pay any valid check of the depositor, but it cannot
charge against the depositor's account money paid upon a forged
check, or upon a check to which the bank has obtained title by way of
a forgery.

[5] Of course, the government was not chargeable with knowledge
of the signatures of the payees of the checks of its disbursing agent.
In Leather Manf. Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657, 29
L. Ed. 811, Mr. Justice Harlan said:

"If the defendant's officers, before paying the altered checks, could by
proper care and skill have detected the forgeries, then it cannot receive a
credit for the amount of those checks, even if the depositor omitted all ex-
amination of his account."

In New York Produce Exchange Bank v. Houston, 169 Fed. 785,
95 C. C. A. 251, the court held that, where a bank was negligent in
paying certain forged checks, the depositor would not be estopped by
his own negligence from claiming the amount so paid unless such neg-
ligence was directly connected with the forgeries. In United States
v. Nat. Exchange Bank, 214 U. S. 302, 29 Sup. Ct. 665, 53 L. Ed.
1006, 16 Ann. Cas. 1184, the court said:

"The exceptional rule as to certain classes of commercial paper proceeds
upon an assumption of knowledge or duty to know, naturally arising from the
situation of the parties, entirely consonant with their capabilities, and in
accord with the common sense view of their relation. To apply the rule,
however, to the government and its duty in paying out the millions of pen-
sion claims, which are yearly discharged by means of checks, would re-
quire it to be assumed that that was known, or ought to have been known,
which on the face of the situation was impossible to be known, would be-
sides wholly disregard the relation between the parties and would also re-
quire that to be assumed which the obvious dictates of common sense make
clear could not be truthfully assumed."

And the court held that the United States was not chargeable with
the knowledge of the signatures of the persons entitled to receive pen-
sions. If that be true as to the signature of checks made to pension
claimants, by the stronger reason it is true in regard to payments made
to unknown persons whose signatures are not on file in any department
of the government, as was the case of the payments made by McCoy
to persons who worked in his employment. It is not shown that the
defendant has suffered any prejudice, or has been in any way injured
by the delay of the government in commencing the action. When the
demand was made upon it for repayment, the statute of limitations
had not run against the defendant's right of action against the banks
upon which it had the right of recourse, and the allegation in the
amended answer that by reason of the failure of the government to
notify the bank of McCoy's fraud within a reasonable time it had lost
its right against the various banks through which the checks had been
forwarded for payment is not sustained. The defendant bank is in
no better attitude to defend against the government's demand than
would have been the banks which advanced the money to McCoy upon

his forged indorsements. Those banks had the opportunity to discover the facts and it was their duty to do so. Had they investigated, they would have discovered that the holder of those checks had no legal title to them, and was not an authorized payee.

[6] It was their duty to ascertain whether there was such a person as the payee named in the checks, and to know that the person who presented the checks was entitled to receive the payment thereof. They made no investigation, required no identification, and took no precaution. They paid the money negligently, and at their own risk, and the defendant bank in choosing to rely upon the identification of the payee by the banks which cashed the checks did so at its own risk.

[7] The defendant bank, as a national depositary, was chargeable with notice of the limitations of McCoy's authority to check out the public money deposited with it. Section 5153 of the Revised Statutes (U. S. Comp. St. 1901, p. 3465), provides:

"All national banking associations, designated for that purpose by the Secretary of the Treasury, shall be depositaries of public money * * * under such regulations as may be prescribed by the Secretary."

One of the regulations promulgated by the Secretary of the Treasury on April 16, 1903 (Department Circular No. 49, § 6), provides:

"If the object or purpose for which any check of a public disbursing officer is drawn is not stated thereon, as required by departmental regulations, or if any reason exists for suspecting fraud, the office or bank on which such check is drawn will refuse its payment."

Department Circular No. 102, issued on December 7, 1906, contained the following:

"Any check drawn by a disbursing officer upon moneys thus deposited, must be in favor of the party, by name, to whom the payment is to be made, and payable to 'order,' with these exceptions."

The exceptions are not material to the present case. In The Floyd Acceptances, 7 Wall. 666, 19 L. Ed. 169, it was said:

"Whenever negotiable paper is found in the market purporting to bind the government, it must necessarily be by the signature of an officer of the government, and the purchaser of such paper, whether the first holder or another, must, at his peril, see that the officer had authority to bind the government."

These citations are applicable to the contention of the defendant that the checks were payable to a fictitious payee, with the knowledge of the drawer, and that, therefore, it must be held that they were checks payable to bearer. It is true that they were made payable to a fictitious payee with the knowledge of the drawer, if McCoy is to be deemed the drawer.

[8] But we are inclined to the view that the United States is the drawer of the checks, and that the knowledge of McCoy is not to be imputed to the government. He was the government's agent, it is true, but he was not its agent to draw checks to fictitious payees. In drawing such checks he was not only acting without authority, but in violation of his instructions, and in fraud of his principal. That the knowledge of the agent is not in such a case the knowledge of the principal is held in the following cases: Harmon v. Old Detroit Nat.

Bank, 153 Mich. 73, 116 N. W. 617, 17 L. R. A. (N. S.) 514, 126 Am. St. Rep. 467; Shipman v. Bank, 126 N. Y. 318, 27 N. E. 371, 12 L. R. A. 791, 22 Am. St. Rep. 821; Armstrong v. Nat. Bank, 46 Ohio St. 512, 22 N. E. 866, 6 L. R. A. 625, 15 Am. St. Rep. 655; Chism v. First National Bank, 96 Tenn. 649, 36 S. W. 387, 32 L. R. A. 778, 54 Am. St. Rep. 863.

It follows that the judgment must be reversed, and the cause remanded to the court below for a new trial, with instructions to sustain the demurrer to the defendant's second affirmative defense.