IN THE

# SUPREME COURT

OF

# OREGON.

Argued at Pendleton May 8, affirmed July 10, costs retaxed October 2, 1923.

## JOSEPH MILLING CO. *v.* FIRST BANK OF JOSEPH.

(216 Pac. 560.)

**Trial—Where Both Parties Move for Directed Verdict, Judge must Decide Questions of Fact.**

1. Where both parties moved for a directed verdict in an action by a depositor to recover money paid by a bank on a forged indorsement of plaintiff's check and charged to plaintiff's account, the action being one in which the parties might waive a jury, the judge was required to decide the questions of fact.

**Appeal and Error—Judge's Findings of Fact on Motion for Directed Verdict must be Sustained, if Any Substantial Evidence in Support.**

2. The direction of a verdict by the judge on 'motion by both the parties must be sustained, if the record contains any substantial evidence to support it.

**Banks and Banking—Plaintiff Held to have Presented Substantial Evidence of Nonexistence of the Person or Concern of the Name Used in Alleged False Indorsement on Check.**

3. In an action by a depositor against a bank to recover money paid by the bank on depositor's check bearing an alleged false indorsement, *held*, that plaintiff presented substantial evidence of the nonexistence of any corporation, partnership, or concern doing business under the name in which the check was indorsed.

**Banks and Banking—Evidence Held to Show That Depositor Gave Bank Sufficiently Prompt Notice of Forged Indorsement on Check.**

4. In an action by a depositor against a bank to recover the amount of a depositor's check paid by the bank on an alleged

---

1. Effect of request by both parties for direction of verdict, see notes in 6 Ann. Cas. 545; 13 Ann. Cas. 372; Ann. Cas. 1913C, 1342.

109 Or.—1          (1)

false indorsement, evidence *held* to show that the depositor had given to the bank sufficiently prompt notice of the forgery.

**Banks and Banking—Obligation of Bank to Pay Only on Genuine Indorsement Held Absolute.**

5. The obligation of a bank is not merely to use reasonable care to pay a check in accordance with the order of the depositor, but is absolute, and the bank must pay only to the payee named, or to his order, on genuine indorsement.

**Banks and Banking—As to Bank's Liability on Forged Indorsement, Depositor Held not Negligent in Misnomer or Abbreviation of Payee.**

6. Where a depositor was indebted to the "Claremont Storage Warehouse, Inc.," and mailed its check, addressed to the "Claremont Storage & Warehouse Company," payable to "Clearmount Storage Co.," *held* that, whether the name in the body of the check be treated as a misnomer or an abbreviation, there was no negligence by the depositor, precluding recovery against the bank on an alleged forged indorsement by "Clearmont Storage Co.," followed by the name of an individual.

**Bills and Notes—Rule That Check Payable to Fictitious Person is Payable to Bearer Held not Applicable, Where Payee was Misnomer or Name Abbreviated.**

7. Section 7801, subdivision 3, Or. L., providing that a negotiable instrument is payable to bearer, when it is payable to the order of a fictitious or nonexisting person, and such fact was known to the person making it so payable, was not applicable where depositor intended to pay to a certain warehouseman, but the name in the check was either misnomer or abbreviation, and the bank paid on an alleged false indorsement.

**Banks and Banking—Burden on Bank to Show That Check Paid on Alleged False Indorsement was Paid to Concern Named, or That Depositor was Negligent.**

8. In an action against a bank by a depositor to recover the amount paid by the bank on an alleged false indorsement of a check drawn by the depositor, the burden was on defendant to show that payment was made to the concern named in the check, or that defendant was misled by negligence or fault of the depositor.

From Wallowa: J. W. Knowles, Judge.

In Banc.

The plaintiff, the Joseph Milling Company, is a corporation with its principal place of business at Joseph, Oregon, and was engaged in "milling and handling grain." The milling company was a depositor with the defendant, the First Bank of Joseph, a banking corporation located at Joseph. The plain-

tiff brought this action against the defendant to recover $700 paid by the defendant on a check drawn by the plaintiff on the defendant but bearing, the plaintiff contends, the forged indorsement of the payee. When both parties rested, each of them moved for a directed verdict, and thereupon the court directed a verdict for the plaintiff. The defendant appealed from the consequent judgment.

AFFIRMED.   COSTS RETAXED.

For appellant there was a brief over the names of *Mr. D. W. Sheahan* and *Mr. Daniel Boyd,* with an oral argument by *Mr. Sheahan.*

For respondent there was a brief and oral argument by *Mr. A. W. Schaupp.*

HARRIS, J.—In 1918, the plaintiff shipped six carloads of flour to the City of New York consigned to itself. The cars were not unloaded within the prescribed time, and for that reason the railroad company delivered the flour to the Claremont Storage Warehouse, Inc., a bonded warehouseman for storage. In November, 1918, the Joseph Milling Company received from the warehouseman a statement showing that the milling company owed the warehouseman $2,000 for freight, cartage, storage, and other charges paid and made on account of the six carloads of flour. Upon receipt of this statement the plaintiff on November 26, 1918, drew its check for $1,000 on the defendant bank payable to the order of "Claremount Whrs. & Storage Co. N. Y." and mailed it to the Claremont Storage & Warehouse Company, 285 East 137th Street," which was the address of the Claremont Storage Warehouse, Inc. This check for $1,000 was received by the warehouseman and by it credited

to the plaintiff. On February 9, 1919, the plaintiff drew its check for $700 on the defendant bank payable to the order of "Clearmount Storage Co."; and this check, according to the testimony of F. D. McCully, the president and manager of the Joseph Milling Company and the person who wrote the check, was mailed to the "Claremont Storage & Warehouse Company, 285 East 137th St., New York City, the same as the thousand dollar check was forwarded,—the same address." McCully testified that he mailed the seven hundred dollar check as a payment on the debt due the warehouseman. F. D. McCully who represented the plaintiff in all its business transactions says that he did not use the word "incorporated" in "any of my checks." The word "company," or its abbreviation, was employed instead of the word "incorporated." Although McCully made the one thousand dollar check payable to "Claremount Whrs. & Storage Co. N. Y." and the seven hundred dollar check payable to "Clearmount Storage Co.," he speaks in his testimony of the "Claremont Storage & Warehouse Company" and his testimony is that his letters written for the milling company were addressed to "Claremont Storage & Warehouse Company."

The plaintiff placed the selling of the flour in the hands of the Northern Grain & Warehouse Company, a concern having its headquarters in Portland, Oregon, and a "house" in the City of New York. In the latter part of March or the first days of April, 1919, the Claremont Storage Warehouse, Inc., rendered to the Northern Grain & Warehouse Company a complete statement of the charges made and credits given on account of the six carloads of flour, and this statement was by the latter company forwarded to

the Joseph Milling Company. The statement credited the plaintiff with the check for $1,000, but no mention was made of the seven hundred dollar check. Upon receiving the statement, F. D. McCully, as president and manager of the plaintiff, examined the statement and observed that the plaintiff had not been credited with the seven hundred dollar check; and that was the first time that any representative of the plaintiff knew that the milling company did not "have credit for the $700." McCully went to the defendant and asked M. B. Kadderly, the assistant cashier, "if that check had been returned." Kadderly looked through the plaintiff's paid checks and found the seven hundred dollar check. Written on the back of the check with pen and ink was the following indorsement: "Clearmont Storage Co."; and immediately under this indorsement and apparently written with the same pen and ink and by the same hand were the words "Alexander Strausz." Neither the word "by" nor any other word was used to indicate that the "Clearmount Storage Co." had indorsed by any individual. The check also bore the stamped indorsement of The S. S. Brown Co., directing payment to the N. Y. Produce Exchange Bank. The S. S. Brown Co. was a depositor with the N. Y. Produce Exchange Bank; and while the evidence shows payment by that bank to The S. S. Brown Co., there is no evidence, aside from the indorsements on the check, to indicate how the check came into the hands of The S. S. Brown Co. Stamped indorsements show that the check passed through the hands of different banks and finally reached the defendant bank, and it paid the check on February 26, 1919. McCully testified that when Kadderly found the seven hundred dollar check, "I took

the check and compared it with the indorsement on the thousand dollar check" and discovered that "the indorsement wasn't the same." The indorsement on the one thousand dollar check is "Claremont Storage Warehouse, Inc." McCully says that he notified the bank "at that time that the check had been forged." Letters were written to some of the indorsers by the defendant and by the attorney for the plaintiff in an attempt to adjust the matter; but all attempts to effect a settlement proving futile, the plaintiff sued the defendant in August, 1920. The plaintiff caused the warehouseman to be paid in full, and consequently the warehouseman has no claim against the defendant and the plaintiff is the only party who has any claim, if any there be, against the defendant.

1, 2. The defendant assigns as errors the refusal of the court to grant defendant's motion for a judgment of nonsuit, the refusal of the court to direct a verdict for the defendant, and the ruling of the court granting the plaintiff's motion for a directed verdict. The assignments of error do not include any objection to the reception or rejection of evidence. Both parties having moved for a directed verdict, and this being an action wherein the parties may waive the right of trial by jury, the circuit judge was required to decide the questions of fact: *First Nat. Bank* v. *Bach,* 98 Or. 332, 335 (193 Pac. 1041); *Wells* v. *First Nat. Bank,* 80 Or. 329, 335 (157 Pac. 145); for the parties in effect agreed to submit the questions of fact to the judge and to make him the exclusive authority to pass upon the weight of the evidence, with the result that the direction of the trial judge must be sustained if the record contains any substantial evidence to support the judgment: *Patty* v. *Salem Flouring Mills Co.,* 53 Or. 350, 360 (96 Pac. 1106, 98 Pac.

521, 100 Pac. 298); *Rugh* v. *Soleim,* 92 Or. 329, 337 (180 Pac. 930); *Fletcher* v. *Yates,* 105 Or. 680 (211 Pac. 179, 182). Of course if the record is devoid of any evidence to support an essential fact a judgment cannot be permitted to stand; *Tillamook County Bank* v. *International Lumber Co.,* 106 Or. 339 (211 Pac. 183, 941); but the mere fact that the record contains contradictory evidence does not warrant a reversal of the findings made and conclusion reached by the trial judge. See, also, *Wilson & Hollenbeck* v. *United States Lumber & Box Co.,* 108 Or. 641 (215 Pac. 491).

3. The defendant contends that it was entitled to a directed verdict because the milling company failed to introduce any legal evidence showing that the payee particularly specified was nonexistent. This contention involves the argument that because of certain presumptions it must be concluded that there was a concern of some kind, corporate or otherwise, doing business as the Clearmont Storage Co. or as the Clearmount Storage Co.; and that since the plaintiff has not offered any evidence to contradict such conclusion, it must follow that the defendant was entitled to a directed verdict on the theory that the payee particularly specified did in truth receive the money. In other words, the argument is that it must be presumed that there was a concern whose name was precisely as written in the body of the check, "Clearmount Storage Co." or exactly as indorsed on the back of the check, "Clearmont Storage Co." The defendant offered no evidence tending to show the existence of a partnership or a corporation or a person doing business under the name of Clearmont Storage Co. or of Clearmount Storage Co.; and hence if there be any evidence at all now available to the defendant for the purpose of showing the existence of a concern

having the precise name written in the body of the
check or first written on the back of the check it con-
sists only of disputable presumptions such as a per-
son is presumed innocent of crime or wrong; a
private transaction is presumed to have been fair and
regular; and it is presumed that the law has been
obeyed: Section 799, subds. 1, 19, 34, Or. L. Assum-
ing, without deciding, that the presumptions men-
tioned are applicable and therefore constitute some
evidence of the existence of a concern the name of
which is precisely as written in the check or on its
back, and assuming further, in order to present the
case most favorably to the defendant, but without de-
ciding, that the burden of proof rests upon the drawer
and not on the drawee, nevertheless, it will be found
that the plaintiff offered substantial and competent
evidence of the nonexistence of any corporation, part-
nership or concern doing business under the precise
name of Clearmount Storage Co., or under the name
of Clearmont Storage Co. Edward Glasser, a law
clerk, testified that he had examined the records and
that there

"is no corporation, copartnership, or concern doing
business in the State of New York, or authorized to
do business in the State of New York, under the name
of Clearmont Storage Company," and that the "only
concern which is authorized to use the name Clare-
mont Storage Warehouse, Inc., is that in Bronx
County, whose place of business is at 280–287 East
137th Street near 3rd Avenue, Borough of Bronx,
City of New York."

While it may be assumed for the purposes of the
present discussion that the testimony of Glasser
might not weigh so much as that of the officer or
officers in charge of the records, his testimony was
competent and substantial in character. In this con-

nection it is not inappropriate to direct attention to the following adjudications holding that as to the question we have been discussing, the burden of proof rests upon the drawee: *City of St. Paul* v. *Merchants' National Bank,* 151 Minn. 485 (187 N. W. 516, 22 A. L. R. 1221); *Harmon* v. *Old Detroit Nat. Bank,* 153 Mich. 73 (116 N. W. 617, 126 Am. St. Rep. 467, 17 L. R. A. (N. S.) 514).

The defendant contends: (1) That the milling company failed to introduce any legal evidence that the indorsement of the named payee was forged or unauthorized; and (2) that there is evidence showing that Alexander Strausz had some business connection with plaintiff and that such evidence is sufficient to justify the inference that Strausz had implied authority to receive the shipment from the milling company and to handle checks in relation thereto. These two contentions are connected with each other and may be considered together. The facts thus far stated must be supplemented by a further statement.

The milling company had "been shipping more or less for several years." If a commodity shipped was sold in advance of shipment the plaintiff forwarded a bill of lading to which was attached a draft drawn on the person to whom the commodity had been sold. On the bill of lading to which the draft was attached would be a notation stating: "Notify so-and-so"; and the person notified would be authorized to receive the shipment of goods upon payment of the draft. F. D. McCully testified that some of the bills of lading "the year before" had notations on them: "Notify Alexander Strausz"; and that although Strausz "sold a few cars of flour the year before" he "never received any of these cars personally." McCully also testified that he did not at the time of

the trial remember whether any of the "shipments and bills of lading representing" the six carloads turned over to the warehouseman contained the notation "Notify Alexander Strausz." William J. Wilson, the secretary of the warehouseman, when asked to tell about the business transacted by his company with the plaintiff during the year 1918 and 1919 testified:

"Joseph Milling Company shipped certain cars of flour to this city consigned to their company, who notified Alexander Strausz upon their arrival. Sight draft against bill of lading. Said cars were stored by the railroad company, who transported them to this city in the storage warehouse of my corporation, the Claremont Storage Warehouse, Inc., as aforesaid."

When requested to furnish a copy of the warehouseman's records, Wilson replied by saying:

"The following is a true transcript of all transactions with Joseph Milling Company, notify Alexander Strausz of 366 West 117th Street, New York City, as shown by the records of Claremont Storage Warehouse, Inc. * * ";

thus indicating the connection the warehouseman understood Strausz had with the shipments. Wilson also testified that Strausz "called at our office frequently," and that he had no authority to indorse checks for the warehouseman. One witness for the plaintiff stated: "We were never able to locate Strausz," and "the last time they tried to find Strausz they could not find him."

In brief, the plaintiff was indebted to the Claremont Storage Warehouse, Inc., which had a place of business at 285 East 137th Street, New York City, and the milling company mailed to that street number a check for $700 payable to the Clearmount

Storage Co., but addressed to Claremont Storage & Warehouse Company. The check was indorsed "Clearmont Storage Co." and "Alexander Strausz" by the same hand and with the same pen and with the same ink. There was no concern authorized to do business under the name of Clearmont Storage Co. Strausz who formerly called frequently at the office of the warehouseman could not be located. The plaintiff intended that the warehouseman, and that no other concern or person, should receive the check. If the indorsement "Alexander Strausz" was written by Strausz, and evidently it was, the evidence is almost conclusive that he also wrote the indorsement "Clearmont Storage Co." If the check was in due course of mail delivered at the address to which F. D. McCully says he sent it, then it is fair to infer that Strausz unlawfully obtained possession of the check and then wrote the two indorsements mentioned. The difference between the spelling of the name of the payee in the body of the check and the spelling of its name on the back of the check is in view of the surrounding circumstances highly significant, although the difference consists of but a single letter. There is ample evidence to support a finding that the first indorsement was forged and unauthorized; and there is not a syllable of evidence to support any finding that Strausz was authorized to cash checks payable to the warehouseman or to the Clearmont Storage Co.

4. It is argued that the plaintiff did not within a reasonable time object to a statement rendered to it by the bank. This statement was accompanied by paid checks as vouchers including the seven hundred dollar check. The general rule, stated in comprehensive terms, is that the depositor must give to the

bank prompt notice of forgery. Although some authorities hold that delay by the depositor does not prevent him from recovering from the bank unless the bank has by his delay been injured we shall assume for the purposes of this cause, but without deciding, that the duty of the depositor is absolute, and that if he does not promptly give notice to the bank he loses any right to recover from the bank money innocently paid on a check bearing the forged indorsement of the payee. The evidence is contradictory upon the subject. However, if the evidence introduced in behalf of plaintiff is believed it amply supports the position taken by the plaintiff.

The first notice of any irregularity coming to the plaintiff was in March or April, 1919, when it received the statement which had been prepared by the warehouseman. F. D. McCully observed that the statement did not credit the milling company with the seven hundred dollar check, and because of that fact he immediately went to the bank and asked H. B. Kadderly, the assistant cashier, if the seven hundred dollar check had been returned. Kadderly severed his connection with the bank before the date of the trial and went to California where he was at the time of the trial; and he was not used as a witness by deposition or otherwise. There is no evidence that F. D. McCully did not have the conversation related by him except the inference to be drawn from the testimony of the president and cashier that notice of the forgery did not come to them until about July. F. D. McCully testified that Kadderly looked through the paid checks and found the seven hundred dollar check and upon comparing it with the one thousand dollar check it was discovered that "the indorsement wasn't the same," and at that time he notified the

bank, through Kadderly, "that the check had been forged." A bank statement had not been rendered to the plaintiff since February 10, 1919. The record is not so clear as it might be; but we understand from the evidence that immediately after the discovery of the forgery the bank caused a statement to be prepared and this statement together with the paid checks was soon thereafter delivered to McCully. The statement showed the credits and debits from February 10, 1919, to April 19, 1919. This bank statement showed that the seven hundred dollar check had been paid by the defendant on February 26, 1919. F. D. McCully testified that "right after I found out that the check was in that condition" he, in company with F. M. Gaulke, the president of the bank, went to the office of A. W. Schaupp, who had been "attorney for both firms," to "see if it could be adjusted." McCully further testified:

"I hated to start suit on the proposition against a bank I had been manager of for thirty years, and was doing business with, and then the question was brought up and the suggestion that I send it to this Northern Grain & Warehouse Company, which I did, for them to see if they could do anything with the bank that paid it there."

The testimony of McCully is to the effect that he demanded payment by the bank "of the seven hundred dollars" but that the plaintiff "didn't get anything; they wanted to take it up and see if it could not be settled." Schaupp testified that McCully came to him in the spring of 1919 and stated that he expected to bring suit against the bank if it did not pay the milling company "on the seven hundred dollar check"; and Schaupp brought about a meeting in his office "some time during the spring of 1919," at which he, Gaulke and McCully were present "and at

that time it was decided that the bank should attempt to make collection through the other indorsers.'' There is evidence to the effect that both the plaintiff and defendant acting together attempted, but without success, to secure a settlement by one or more prior indorsers; and that finally in the fall of 1919 Gaulke and McCully went to Schaupp and informed him that ''they were unable to do anything,'' and requested him to ''take it up a little farther at New York— with the New York Produce Exchange Bank,'' and in compliance with the request so made, Schaupp wrote letters, which, however, were of no avail. In view of this condition of the record the defendant cannot successfully claim there is no evidence showing that the plaintiff notified the bank of the forgery with reasonable promptness.

We assume for the purposes of this case, but do not decide, that possession of the check by the bank would have been necessary in order to enable it to maintain an action against any of the prior banks or persons through whose hands the check passed; and we shall also assume for the purposes of this case, but we do not decide, that in the absence of some act or conduct excusing the making of a tender the depositor must, before he can successfully sue the bank, tender to the bank any check bearing the forged indorsement of the payee. Even though it be assumed that a formal tender was not made until August, 1919, it is quite apparent from the record that any tender that might have been made immediately after or within a reasonable time after the plaintiff received the bank statement would not have changed in the least the positions of the parties. The plaintiff, according to its evidence, notified the bank of the forgery immediately upon its discovery; and apparently the discovery of

the forgery was one of the reasons why the bank at that time prepared the bank statement showing the debits and credits from February 10, 1919, to April 19, 1919. It is true that the plaintiff appears to have assisted in trying to secure an adjustment by one of the indorsing banks, but this was done for the purpose of avoiding, if possible, the necessity of litigation between the plaintiff and defendant; and while the plaintiff was willing to help the defendant in bringing about payment to the latter by one of the indorsing banks, it had not and did not release the defendant from liability, but, upon the contrary, according to the testimony of McCully, the plaintiff demanded payment by the bank and consequently the bank was made fully aware of the position taken by the plaintiff: *Los Angeles Investment Co.* v. *Home Savings Bank,* 180 Cal. 601 (182 Pac. 293, 5 A. L. R. 1193); *United States* v. *National Bank of Commerce,* 205 Fed. 433 (123 C. C. A. 501); 7 C. J. 686, note).

5. The relation between banker and depositor is one of debtor and creditor; and the implied agreement between them is that the banker will pay only in conformity with the orders of the depositor. The obligation of the bank is not merely to use reasonable care to pay in accordance with the order of the depositor, but the undertaking of the bank is, stated broadly, absolute. A bank must pay a check only to the payee named, or to his order. The obligation of the bank is to pay a check only upon a genuine indorsement. The drawer is not presumed to know the signature of the payee; but the bank must at its peril determine the identity of the payee and the genuineness of his signature. A bank cannot charge against the account of its depositor any sums as payments unless those sums have been paid to such per-

sons as the depositor has directed; and payments made upon forged indorsements are at the peril of the bank unless it can claim protection upon the ground of estoppel or negligence chargeable to the depositor: *Los Angeles Investment Co.* v. *Home Savings Bank,* 180 Cal. 601 (182 Pac. 293, 5 A. L. R. 1193); *City of St. Paul* v. *Merchants' National Bank,* 151 Minn. 485 (187 N. W. 516, 22 A. L. R. 1121); *Shipman* v. *Bank of the State of New York,* 126 N. Y. 318 (27 N. E. 371, 22 Am. St. Rep. 821, 12 L. R. A. 791); *Murphy* v. *Metropolitan Nat. Bank,* 191 Mass. 159 (77 N. E. 693, 114 Am. St. Rep. 595); 7 C. J. 686; 3 R. C. L. 540, 542.

6. The defendant contends that the plaintiff was negligent in drawing a check payable to the order of "Clearmount Storage Co.," instead of "Claremont Storage Warehouse, Inc." And taking this contention as a premise, the defendant proceeds to argue that it is entitled to the protection of the rule that where one of two innocent parties must suffer the one whose act was the cause of the loss must bear it. Most of the precedents relied upon by the defendant are cases where the drawer made and delivered his check to an impostor. (See note in 22 A. L. R. 1128.) While the adjudications dealing with negotiable instruments issued to impostors are divisible in two classes, with one class holding the drawee liable and the other class relieving the drawee from liability to the drawer for money paid on such checks, it is obvious that the facts presented to us readily distinguish the instant case from those cases which involve checks delivered to an impostor. The plaintiff was indebted to the "Claremont Storage Warehouse, Inc."; and for the purpose of making a payment on that indebtedness the plaintiff mailed to the "Clare-

mont Storage & Warehouse Company'' at the proper street and city and state address of the warehouseman a check payable to ''Clearmount Storage Co.'' If the name written in the body of the check be treated as a misnomer and not as a mere abbreviation, the check was nevertheless intended for the warehouseman and was one upon which the warehouseman in the attending circumstances was entitled to payment by the bank: 14 C. J. 324. The abbreviation used to designate the warehouseman followed by a forged indorsement, which as previously noted is not identical in its spelling with the name written in the body of the check, did not bring about payment by the bank any more than the full name of the warehouseman followed by a forged indorsement could have brought about payment by the bank. The defendant probably relied upon the indorsements of the banks through whose hands the check passed just as it would have relied upon such indorsements if the name of the payee had been written in full and the intended payee had actually received the money and indorsed the check with its authorized signature. If the defendant was content to place its reliance upon whatever inquiry or investigation was made by the prior bank indorsers then as between the drawer and the drawee the latter must suffer the loss.

If one should hazard a guess that the plaintiff inadvertently mailed the check to Strausz, and, based upon such a guess, it should be argued that the plaintiff was negligent in permitting the check to come into the hands of a person not the payee, such supposed negligence, it has been held, would not relieve the bank from liability to the drawer for moneys paid on the forged indorsement of the payee's name: *Miners & Merchants' Bank* v. *St. Louis Smelting & Refining*

*Co.* (Mo. App.), 178 S. W. 211; Brannan on the Negotiable Instruments Law (3 ed.), 86.

7. The defendant seeks the protection of Section 7801, subdivision 3, Or. L., which provides that a negotiable instrument is payable to the bearer "when it is payable to the order of a fictitious or nonexisting person and such fact was known to the person making it so payable." No doubt can be said to have existed on the part of the drawer as to the identity of the payee intended. The plaintiff intended to pay the warehouseman which was an entity actually existing. It is true that no concern existed bearing the precise name written in the body of the check or the precise name indorsed on the back of the instrument; but it is also true that in the attending circumstances the name written in the body of the check was at the most nothing more than a misnomer and it would probably be more accurate to say that it was a mere abbreviation. The statute as to fictitious payees has no application to the instant case: 8 C. J. 178, 179, 181; *Los Angeles Investment Co.* v. *Home Savings Bank,* 180 Cal. 601 (182 Pac. 293, 5 A. L. R. 1193); *Shaw, Kendall & Co.* v. *Brown,* 128 Mich. 573 (87 N. W. 757); *Weishaar* v. *Pendleton,* 73 Or. 190, 199 (144 Pac. 401); *Hill* v. *McCrow,* 88 Or. 299, 307 (170 Pac. 306); *Harmon* v. *Old Detroit Nat. Bank,* 153 Mich. 73 (116 N. W. 617, 126 Am. St. Rep. 467, 17 L. R. A. (N. S.) 514). See, also, *Shipman* v. *Bank of the State of New York,* 126 N. Y. 318 (27 N. E. 371, 22 Am. St. Rep. 821, 12 L. R. A. 791); and Brannan on the Negotiable Instruments Law (3 ed.), 481, 482.

8. Whether the name written in the body of the check be called a mere abbreviation of the full name of the warehouseman or be treated as a misnomer, nevertheless the indorsement of the name was a

forgery.   The burden was on the defendant to show that payment was made to the concern named in the check or that the defendant was misled by some negligence or other fault of the plaintiff; and, having failed in this respect, the defendant must answer to the plaintiff for the amount of the check: *Harmon* v. *Old Detroit Nat. Bank,* 153 Mich. 73 (116 N. W. 617, 126 Am. St. Rep. 467, 17 L. R. A. (N. S.) 514); *Murphy* v. *Metropolitan Nat. Bank,* 191 Mass. 159 (77 N. E. 693, 114 Am. St. Rep. 595).

The judgment is affirmed.

AFFIRMED.   COSTS RETAXED.