Argued October 18, reversed and remanded December 12, 1922, rehearing denied January 16, costs taxed January 30, 1923.

## TILLAMOOK COUNTY BANK *v.* INTERNATIONAL LUMBER CO.

(211 Pac. 183; 211 Pac. 941.)

**Bills and Notes—Directed Verdict for Plaintiff Improper, Where Bills of Exchange Sued on were not Offered in Evidence.**

1. In view of Sections 7822, 7839, 7866, Or. L., in action on three inland bills of exchange, a directed verdict for plaintiff for the amount due on said bills was error as respects two of the bills, where they were not produced at the trial, nor was any excuse offered for their nonproduction, nor any evidence offered to show that plaintiff, the original payee thereof, was the owner and holder of either at the time of trial; plaintiff's allegation that it was the

owner and holder of the two bills having been denied by the answer, so that plaintiff had the burden of proof to establish this issue.

### ON PETITION FOR REHEARING.

**Bills and Notes—In Action by Payee Against Maker, Ownership by Plaintiff Need not be Specifically Alleged.**

2. In action by payee against maker of bills of exchange where copies of the bills were set forth in the complaint and the complaint in substance alleged that defendant, for value, executed and delivered them to the plaintiff and thereby promised to pay plaintiff the amount thereof, this sufficiently stated plaintiff's cause of action, as from these allegations it would be presumed that plaintiff was the owner and holder of the bills.

**Bills and Notes—Where Plaintiff Payee Alleges Ownership of Bills of Exchange and Defendant Maker Denies Such Ownership, Plaintiff must Prove Ownership by Production of Notes or Excusing Nonproduction.**

3. In view of Sections 7880, 7982, Or. L., in action on bill of exchange by payee against maker, where plaintiff alleges it is the owner and holder of the bills, and this is denied by defendant, plaintiff must prove its ownership, either by a production of the bills themselves or by proving a legal excuse for their nonproduction, for, while, where a negotiable instrument is made payable to the order of another, the presumption is that the payee continues to be the owner thereof, such presumption cannot be indulged in a case where the issues made by the pleadings cast the duty upon plaintiff, in possession of the bills, to produce, identify, and introduce them at the trial.

From Tillamook: George R. Bagley, Judge.

Department 1.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. W. I. Harrison, Mr. Robert H. McGrath* and *Messrs. Wilbur, Beckett & Howell,* with an oral argument by *Mr. E. K. Oppenheimer.*

For respondent there was a brief over the name of *Messrs. Botts & Winslow,* with an oral argument by *Mr. H. T. Botts.*

RAND, J.—Plaintiff commenced this action against the International Lumber Company and W. A. Bennett to recover upon three inland bills of exchange,

each drawn in favor of and payable to the order of the plaintiff bank. These instruments were drawn on the International Lumber Company by W. A. Bennett, who at the time was doing business under the name of Virgin Spruce Lumber Company. The first is for the sum of $1,000 and is dated October 8, 1920, and by its terms was payable January 9, 1921. The other two are for $3,000 each and were drawn on November 9, 1920, and by their terms were payable on February 9, 1921. Each contains thereon a written indorsement of acceptance. The indorsement on the one for $1,000 is in these words: "Accepted Oct. 8, 1920, Payable at Tillamook, Ore., International Lmbr. Co., By D. W. Taylor." The written indorsement on the other two is in the same words except that the date of acceptance is November 9, 1920. The action was commenced against both the drawer and the acceptor, but so far as the record discloses, was prosecuted against the acceptor only.

The complaint alleges that the plaintiff is the owner and holder of these instruments; that D. W. Taylor, by whom the acceptances were made, was the vice-president of the defendant company and was duly authorized to accept said bills of exchange for and on behalf of the defendant company. It also alleged that no payments had been made thereon, except the sum of $235.09, paid upon the $1,000 bill of exchange. The answer admitted that Taylor was the vice-president of said company but denied that he was authorized to accept said bills of exchange for or on behalf of said company. It also affirmatively alleged that the $1,000 bill of exchange had been paid in full and denied that the plaintiff is or ever was the owner or holder of either or any of said bills of exchange. On the trial, the defendant

company, through its attorney, admitted that these bills of exchange were executed as alleged in the complaint, and because of this admission we conclude that it was wholly unnecessary for the plaintiff to prove the authority of Taylor to make said acceptances on behalf of said company. The bill of exchange for $1,000 was produced and offered in evidence and is attached to the bill of exceptions and evidence was offered tending to prove that no part of the same had been paid except said sum of $235.09.

From the evidence it appears that the two $3,000 bills of exchange were drawn payable to the order of the bank by Bennett and were then forwarded by Bennett to Taylor, who accepted them on behalf of the company and returned them by mail to Bennett, who then delivered them to the plaintiff bank and was credited upon his account in said bank for the amount thereof. Neither of these two $3,000 bills of exchange was produced upon the trial, nor was any excuse offered for their nonproduction, nor was any evidence offered which in any way tended to show that the plaintiff, at the time of the trial, was the owner and holder of either thereof.

At the conclusion of plaintiff's case in chief, the defendant company moved for a directed verdict. This motion was overruled. It then moved for a judgment of nonsuit against the plaintiff, which was also overruled. Then without requesting the court to submit the cause to the jury the defendant company declined to offer any evidence in its own behalf. Thereupon, upon plaintiff's motion, the court directed the jury to return a verdict against the defendant company for the sum of $6,863.82, being the amount for which judgment was demanded in

the complaint. To each of these rulings the defendant excepted and now assigns them as error.

As the $1,000 bill of exchange was produced, identified and offered in evidence, and there was evidence tending to show that it had not been paid in full and plaintiff was demanding judgment for the unpaid balance, it was proper for the court to overrule defendant's motion for a judgment of nonsuit against the plaintiff and also for the court to refuse to grant defendant's motion for a directed verdict. But as it was necessary for the plaintiff, before it could become entitled to a judgment for the amount of these two $3,000 bills of exchange, to allege and if the allegation was denied, to prove that it was the owner and holder of the bills of exchange sued on, and as this allegation was made in the complaint and denied by the answer, the burden of proof to establish this issue was on the plaintiff and as no evidence was offered by the plaintiff upon this issue and no admission concerning the same was made by the defendant, it was not proper for the court to direct a verdict for any sum which included the amount of these two bills of exchange or any part thereof. Nor, under this issue, was it proper for the court to direct a verdict for the amount of these two bills of exchange or for any part thereof for the reason that the same were not produced upon the trial nor were they identified and offered in evidence, nor was the nonproduction of these negotiable instruments excused by proof that the circumstances were such that the defendant could not be compelled to pay them a second time.

"Ordinarily," says Mr. Greenleaf, "the bill must be produced at the trial, in all the parts or sets in which it was drawn. If the bill or other negotiable

security be lost, there can be no remedy upon it at law, unless it was in such a state, when lost, that no person but the plaintiff could have acquired a right to sue thereon. Otherwise, the defendant would be in danger of paying it twice, in case it has been negotiated. It is also his voucher, to which he is entitled by the usage of merchants, which requires its actual presentation for payment, and its delivery up when paid. Therefore, wherever the danger of a double liability exists, as in the case of a bill or note, either actually negotiated in blank, or payable to bearer, and lost or stolen, the claim of the indorsee or former holder has been rejected. And whether the loss was before or after the bill fell due is immaterial. On the other hand, 'if there is no danger, that the defendant will ever again be liable on the bill or note, as if it be proved to have been actually destroyed, while in the plaintiff's own hands, or if the indorsement were specially restricted to the plaintiff only, or if the instrument was not indorsed, or has been given up by mistake, the plaintiff has been permitted to recover, upon the usual secondary evidence. So, if the bill was lost after it had been produced in court, and used as evidence in another action. * * If the loss of a promissory note is proved, the plaintiff, if he is the payee, may recover, unless it is affirmatively proved to have been negotiable; for, in the absence of such proof, the court will not presume that it was negotiable." 2 Greenl. on Ev. (16 ed.), § 156.

In the case of *In re Pirie,* 198 N. Y. 209 (91 N. E. 587, 19 Ann. Cas. 672), the petitioner offered in evidence a mortgage, which had been duly executed and recorded, and also an assignment of the mortgage to the petitioner. The mortgage was given to

secure two notes of $500 each, one payable in six months and the other in eighteen months from date, with interest. A note in every respect corresponding with date and amount of the second note described in the mortgage and payable in eighteen months was produced by the petitioner and offered and received in evidence over the objection that it had not been sufficiently proven. It was held that ''the acknowledgment of the mortgage of necessity embraced an acknowledgment of the matters therein stated, including that of its being a collateral security for the payment of the note described. It is thus an admission of the making of a note corresponding in date, names, and amount with that recited in the mortgage, and is *prima facie* evidence to that extent of the note secured thereby. But this is not sufficient to permit the note to be received in evidence, or judgment entered thereon. The mortgage merely establishes that there was such a note outstanding. It does not identify the paper offered as the genuine note, or that it was not forged or spurious; and, inasmuch as the burden rests upon the party offering it, it becomes necessary that he supply further evidence showing that it is the genuine paper described in the mortgage.''

In the latter case the court quoted with approval from *Palmer* v. *Manning,* 4 Denio (N. Y.), 131, in part as follows:

'' 'Evidence that the defendant had executed a note answering the description of the note produced, without other proof of identity, is not sufficient to submit to a jury to pass upon the question whether the defendant executed the note produced.' To the same effect are the cases of *Shaver* v. *Ehle,* 16 Johns. (N. Y.) 201; *Minard* v. *Mead,* 7 Wend. (N. Y.) 68; *Jackson* v. *Sackett,* 7 Wend. (N. Y.) 94; *Bardin* v.

*Stevenson,* 75 N. Y. 164, 168, and *People* v. *Corey,* 148 N. Y. 476, 486 (42 N. E. 1066)."

In support of the decision of the court in directing a verdict for the amount demanded in the complaint, plaintiff invokes the statutory presumption "that a thing once proved to exist continues as long as is usual with things of that nature." Subd. 33, § 799, Or. L. So far as this presumption applies to a bill of exchange it goes merely to the existence of the instrument itself and does not in any way tend to identify the holder nor establish the ownership thereof. If this presumption could be indulged in to the extent contended for by the plaintiff, the result would be that the plaintiff would be relieved from the necessity of proving a material allegation of its complaint that had been denied by the answer and the burden of disproving such allegation would be cast upon the defendant without any proof to sustain it being required on the part of the plaintiff.

Also, as sustaining the action of the court in directing a verdict which included the amount of these two bills of exchange, plaintiff cites *Patty* v. *Salem Flouring Mills Co.,* 53 Or. 350, 361 (96 Pac. 1106, 98 Pac. 521, 100 Pac. 298, 18 Ann. Cas. 119), and *Rugh* v. *Soleim,* 92 Or. 329, 336 (180 Pac. 930). In the first case cited it was held that if, at the close of plaintiff's case in chief, the defendant moves for a nonsuit which is overruled, and then declines to produce any evidence and fails to request the court to submit the cause to the jury, he thereby submits the facts to the court for its decision and waives and relinquishes his right to a trial by the jury, and that if then the court, on its own motion, or on that of the plaintiff, directs a verdict in favor of the

plaintiff, the action of the court will be sustained if there is any evidence to support the judgment. In the last case cited, it was held "that when both plaintiff and defendant rest the case and move the court for a directed verdict, the direction of the court in that respect must be sustained if any of the evidence will support it."

In the case of *Fletcher* v. *Yates*, just decided, 105 Or. 680, 211 Pac. 179, this court, through Mr. Chief Justice BURNETT, said:

"It is true that in the end each party moved for a directed verdict in his own favor and thereby waived the right of trial by jury, giving the trial judge the exclusive authority to pass upon the weight of the testimony: *Patty* v. *Salem Flouring Mills Co.*, 53 Or. 350 (96 Pac. 1106, 98 Pac. 521, 100 Pac. 298, 18 Ann. Cas. 119). Ordinarily a verdict thus directed cannot be assailed as a finding of fact, if there is any evidence to sustain it. But this does not obviate the errors committed by the court in producing a state of the testimony as it existed when those motions for a directed verdict were made."

None of these decisions is an authority in support of the contention now made. The court is not authorized in any case to direct the jury to return a verdict which is not sustained by some competent evidence upon every material issue in the case. If the issue is one which must be established before recovery in the action can be had and the party having the affirmative of such issue fails to produce competent evidence in support thereof, his right of recovery will be defeated.

The complaint alleged and the answer denied that the plaintiff was the owner and holder of the two bills of exchange. Before plaintiff could recover the amount due upon these instruments it was bound

to establish the affirmative of this issue. The admission made by the defendant that the bills of exchange in question were executed as alleged in the complaint did not admit that the plaintiff was the holder of these instruments at the time of the trial, or that plaintiff was entitled to maintain an action thereon. As these instruments were negotiable in their origin they continued to be. negotiable until restrictively indorsed or discharged by payment or otherwise: Section 7839, Or. L. And as they were payable to order they could be negotiated by the indorsement of the holder completed by delivery: Section 7822, Or. L. Under Section 7866, Or. L., a negotiable instrument must be exhibited to the person from whom payment is demanded and when it is paid it must be delivered up to the party paying it. If plaintiff had produced these negotiable instruments and properly identified them and offered them in evidence, there could be no possibility, after paying the judgment appealed from, that the defendant would be again required to pay the amount due on these instruments. But so far as the evidence shows, these bills of exchange may have been negotiated by the plaintiff and may be held by a third party for value and without notice, and if the defendant should pay the judgment appealed from, it might a second time be compelled to pay the amount due on these bills of exchange.

1. Under the issues of this case, before the plaintiff could be entitled to a verdict for the amount of the two $3,000 bills of exchange or any part thereof, it was necessary for the plaintiff to prove that these instruments had not been transferred and that the plaintiff was the holder of them at the time of the trial. It was also necessary for the plaintiff, before

becoming entitled to a judgment for the amount thereof, to produce these instruments upon the trial and to identify them and prove that they were genuine and deliver them up by offering them in evidence. "If the possession of the instrument is within plaintiff's control, he is bound to produce it in court at the hearing. Otherwise he must account for and excuse its nonproduction." 2 Ency. of Ev.. 540. "The bill or the note sued on must in general be produced at the trial before a verdict and judgment can be rendered thereon, or an excuse shown for its nonproduction, as that it is lost or destroyed, or is in the possession or control of the adverse party, unless everything which the production of a note in evidence would prove is admitted by the pleadings." 8 C. J. 1058, § 1367. Until these instruments were produced, identified and offered in evidence, or the nonproduction of them excused, there was no evidence before the court, under the issues in this case, to sustain its action in directing a verdict for any sum or amount which included the amount due upon either of said bills of exchange or any part thereof.

It was therefore error for the court to direct a verdict for an amount which included the amount of these two bills of exchange, and for that reason the judgment will be reversed and the cause will be remanded for further proceedings not inconsistent herewith.                    REVERSED AND REMANDED.

BURNETT, C. J., and McBRIDE and HARRIS, JJ., concur.

Rehearing denied January 16, 1923.

## ON PETITION FOR REHEARING.

(211 Pac. 941.)

For the petition, *Messrs. Botts & Winslow.*

*Contra,* Mr. W. I. Harrison, Mr. Robert H. Mc-Grath and *Messrs. Wilbur, Beckett & Howell.*

RAND, J.—Plaintiff, having filed a petition for rehearing, contends that under the doctrine announced in *Mayes* v. *Stephens,* 38 Or. 512 (63 Pac. 760, 64 Pac. 319), it was not necessary for the plaintiff to produce the note sued on or to account for its absence, and that there was as much reason to protect the maker of the note in that case by requiring it to be surrendered up as there is in the instant case.

That case was an action in replevin to recover possession of a tubular boiler and not an action to recover on a promissory note. The plaintiff was the mortgagee of a chattel mortgage upon the boiler given to secure a note payable to and held by the plaintiff. Upon the trial the mortgagee, without objection, had testified that the note and chattel mortgage had been executed and delivered to him, and that he had taken possession of the boiler on the day the note and mortgage were executed and had held possession of it until the defendant, the sheriff, had taken it from his possession under a writ of attachment. The maker of the note was not a party to the action. Under these facts this court said:

"No objection was made to this method of proving the existence of the note and mortgage, which

was clearly substantiated by his testimony, thus obviating the necessity of offering them in evidence.''

It must be conceded that the holder of the note in that case was entitled to keep it until the note was paid and that the recovery of the possession of the boiler alone would not constitute payment of the note, and if the recovery of possession could have operated as payment of the note, the sheriff was not the party to whom delivery of the note should be made. And hence, no reason could exist for the production or surrender of the note in that case.

Counsel also cites *Creecy* v. *Joy,* 40 Or. 28 (66 Pac. 295), which was an action to recover on a promissory note, but in that case the note sued on was introduced and offered in evidence, and for that reason that case fails to support plaintiff's contention.

Plaintiff also cites *Sheehy* v. *Chalmers,* 4 Cal. Unrep. 617 (36 Pac. 514), *Williams* v. *Norton,* 3 Kan. 295, *Reed* v. *Arnold,* 10 Kan. 102, and *Miller & Lux* v. *Dunlap,* 28 Cal. App. 313 (152 Pac. 309). In the first case, the plaintiff sought to recover upon a promissory note and set forth in his complaint a complete copy of the note. The answer admitted the execution of the note and set up as a defense thereto that the note was not to become due or payable until the defendant had received sixty days notice thereof, and that as such notice had not been given the note was not due or payable. The note was not offered in evidence and it was, in effect, held that it was not necessary to produce the note as no proof was required as to matters not in issue.

In the second case above cited, the court said:

''Something was said in the argument about the nonproduction of the note at the trial. There was no

necessity of offering it in evidence. Everything such a performance would have proved, or tended to prove, was admitted by the pleadings.''

In the third case cited the action was founded upon a promissory note and a written contract. Instead of attaching copies of the note and contract to his petition, the plaintiff attached the original note and contract, and during the trial he offered to introduce in evidence the note and contract, but upon the objection of the defendant that the original and not copies of the note and contract had been attached to the petition, the offer was refused. Upon appeal the Supreme Court held that the lower court's reason for sustaining the objection was erroneous, but sustained the ruling upon another ground, namely, that there was no issue upon which these instruments could be produced. Among other things, the court said:

''A mere denial of indebtedness on the note or contract is no denial of the execution of either. When the execution of a written instrument is admitted by the pleadings its legal effect must of necessity follow; and what its legal effect is, is purely a question of law for the court to determine. There is then no issue of fact with reference to the existence or effect of the written instrument upon which evidence can be introduced to the jury; and evidence can never be introduced to a jury except in support of some issue of fact made by the pleadings. The evidence then, as we think, was rightfully excluded.''

In the last case cited, the court held:

''The plaintiff rested its case upon the pleadings. The promissory note, upon which the action was founded, was not offered in evidence; neither was any evidence of its nonpayment given. The execution of the note was not denied in the answer of the

defendants; consequently no evidence of its due execution was necessary. Nor was it necessary to introduce the note in evidence to prove its nonpayment. The allegation of nonpayment is a negative allegation, which plaintiff was not required to prove.''

We do not think that any of these authorities sustain plaintiff's contention.

In addition to the authorities cited in the original opinion we cite 3 R. C. L., page 1338, where it is said:

''Where a note sued on is in the possession of the plaintiff, he must produce it, as it is the best evidence; but if it is in the defendant's possession, and he fails to produce it, the plaintiff may prove its execution and contents by secondary evidence. And secondary evidence must be produced, of course, if the instrument has been lost. * * If the instrument has been lost or destroyed, the plaintiff must prove the fact of loss or destruction. Where a note has been given, its production is generally required in an action on the original cause, for the security of the defendant, and not from any rule of evidence which would prevent the introduction of evidence of indebtedness without the production of the note.''

See also cases there cited; see also *Wyman* v. *Rae,* 11 Gill & J. (Md.) 416 (37 Am. Dec. 70).

In *Roberts* v. *Parrish,* 17 Or. 583 (22 Pac. 136), this court quoted with approval from Van Santvoord's Pleadings, 115, as follows:

''The holder of a promissory note is presumed to be the owner and real party in interest within the meaning of the Code. The production of the note and proof of signature of the maker and indorser is sufficient, without showing value given, even though the note was received after due.''

The statute (Section 7982, Or. L.), defines the term "holder" as follows:

" 'Holder' means the payee or indorsee of a bill or note who is in possession of it, or the bearer thereof."

Section 7880, Or. L., provides:

"Payment is made in due course, when it is made at or after the maturity of the instrument, to the holder thereof, in good faith, and without notice that his title is defective."

In construing the last section Mr. Williston says:

"Payment before maturity is only a personal defense even though made to the holder, and if made to one who is neither the holder nor authorized by him to receive payment is totally inoperative, unless the party paying acquires the instrument properly indorsed, and in effect becomes a purchaser of it. Payment at or after maturity is in effect an absolute defense if made to the party entitled to receive it, since there can be no new holder in due course after maturity. But the only conclusive proof that a person is entitled to receive payment is the contemporaneous surrender of the instrument properly indorsed, and a payment made to one who is not at the time the holder is inoperative. On the other hand, payment at or after maturity to a holder is a discharge by the express words, of section 88; but the party paying will not be discharged if he has notice that the holder is not the person equitably entitled to payment." 2 Williston on Contracts, p. 2168.

It is a general rule that a complaint must contain all the elements necessary to show a complete cause of action, and in an action to recover upon a promissory note or bill of exchange, it is necessary, on the face of the complaint, to show that the party bringing the suit is the lawful owner or holder of the note.

"Plaintiff's interest in the note is an essential fact to be proved, and it must be averred either expressly or by necessary implication." Moak's Van Santvoord's Pleadings (3 ed.), § 227.

The same text-writer, states that where suit is brought directly by the payee against the maker, it is held to be unnecessary to allege that the plaintiff is the owner or party in interest, it being sufficient to say that the defendant is indebted upon the instrument and promised to pay the same to the plaintiff.

In *Moss* v. *Cully,* 1 Or. 147 (62 Am. Dec. 301), where the complaint did not allege a delivery of the note to the plaintiff, but did allege that defendant "made his promissory note in writing and thereby promised to pay to the plaintiff," etc., it was held that the allegation was sufficient to sustain a judgment in favor of plaintiff on demurrer to the complaint.

Again in *Dorothy* v. *Pierce,* 27 Or. 373 (41 Pac. 668), where the complaint did not allege that the party to whom certain county warrants had been issued was the owner and holder of the warrants, but did allege that the warrants were issued and delivered to such party, it was held upon demurrer that the complaint was sufficient.

And in *Williamson* v. *Hurlburt,* 99 Or. 336 (195 Pac. 562), where the complaint alleged the execution and delivery, for a valuable consideration, of a promissory note and a chattel mortgage given to secure the same, and it was urged that the complaint failed to state that the plaintiff was the owner and holder of the note and mortgage, it was held that as against the demurrer, the complaint was sufficient.

"The plaintiff is required to prove, in a suit on a promissory note, 1st, the identity of the note; 2d, his interest in it; 3d, that the defendant is a party

to it; 4th, that the defendant has not performed his contract. The possession of the note is *prima facie* evidence that it is not paid. So, too, it is of ownership, even where there is no averment of ownership in the complaint, and the answer does not set up such a defense. * * If the action be by the payee in person, a copy of the note will, in general, be sufficient, without accompanying it with an averment to show the plaintiff's ownership or interest, within the principle of *Peets* v. *Bratt,* 6 Barb. (N. Y.) 662, and *James* v. *Chalmers,* 2 Seld. (6 N. Y.) 209; and, should the defendant wish to show in his defense that the plaintiff has parted with his interest in the note, he must allege such fact on his part in his answer. Possession of the note, as we have seen, raises the presumption of ownership sufficient to make out a *prima facie* case to sustain the action, which, however, under such a state of pleadings, the defendant would be at liberty to disprove. But the case is different if the right of action has vested in, and the suit is brought by, a third person." Moak's Van Santvoord's Pleadings, § 227.

2. As this action was brought by the payee against the maker of the bills of exchange and copies of the bills were set forth in the complaint, and the complaint in substance alleged that the defendant, for value, executed and delivered them to the plaintiff and thereby promised to pay plaintiff the amount thereof, this sufficiently stated plaintiff's cause of action. From these allegations it would be implied that the plaintiff was the owner and holder of them. Instead of standing upon these allegations alone the plaintiff also alleged that it was the owner and holder of the bills. It thereby gave to the defendant the opportunity to raise the issue of defendant's ownership by a denial of plaintiff's allegation, and thereby relieved the defendant from any necessity of affirmatively alleging that the plaintiff was not the owner

or holder of the bills. Plaintiff's ownership was a material fact which the defendant had the right to dispute, and whenever a dispute arose under the pleadings sufficient to raise this issue the plaintiff was bound to prove its ownership of the bills, either by a production of the bills themselves or by proving a sufficient legal excuse for their nonproduction. As the defendant had the right to put this question in issue and has exercised the right by a sufficient denial of plaintiff's allegation of ownership, we cannot treat plaintiff's allegation of ownership and defendant's denial thereof as surplusage.

Each party must allege "every fact which he is required to prove and will be precluded from proving any fact not alleged, and he must allege nothing affirmatively which he is not required to prove." *Melone* v. *Ruffino,* 129 Cal. 514 (62 Pac. 93, 79 Am. St. Rep. 127).

See also *Thompson* v. *Rathbun,* 18 Or. 202 (22 Pac. 837), where the court said:

"Ordinarily immaterial and nonessential allegations need not be proven but may be entirely disregarded or treated as surplusage; but it is still true that a party must prevail upon substantially the case made in his pleadings."

3. Without producing the instruments in question and offering them at the trial, and without offering any testimony tending to show that the bank was in possession or was entitled to the possession of them, there was nothing before the court to show that plaintiff was entitled to maintain an action thereon. Production of the bills of exchange or an accounting for their absence was necessary to establish plaintiff's right of action as well as to protect the defendant from the possibility of being compelled to pay them a second time.

After reading plaintiff's petition for rehearing, we think that plaintiff must have misunderstood the effect of what we intended to say in our application to the particular facts of this case, of the statutory presumption that a thing once proved to exist is presumed to continue to exist as long as is usual with things of that nature. What we intended to hold was that proof of the execution of these negotiable instruments was, under this particular presumption of law, evidence of the fact that these instruments are still in existence, that they have not been paid, and that they are enforceable by the holder thereof against the maker and nothing further, and that therefore the presumption invoked by the plaintiff was not evidence of the facts contended for by him. That there are other presumptions applicable under certain conditions to negotiable instruments is unquestioned. And where a negotiable instrument is made payable to the order of another the presumption is that the payee continues to be the owner thereof: *Hoffman* v. *Habighorst,* 49 Or. 379 (89 Pac. 952, 91 Pac. 20). But this is a presumption that cannot be indulged in this case because if the plaintiff was in possession of the bills, it was its duty, under the issues made by pleadings, to produce, identify and introduce them at the trial.

For these reasons the petition for rehearing is denied.

McBRIDE, C. J., and BURNETT and HARRIS, JJ., concur.                              REHEARING DENIED.