Argued February 15, reversed and remanded May 29, rehearing
denied September 25, 1923.

# WILSON & HOLLENBECK v. U. S. LUMBER & BOX CO.

(215 Pac. 491.)

**Trial—On Motion for Nonsuit Court must Resolve in Plaintiff's
Favor Every Legitimate Inference from Evidence.**

1. It is the duty of the court in considering a motion for
nonsuit to resolve in favor of plaintiff every legitimate inference
that can arise from the evidence.

**Trial—Motion for Nonsuit is in Effect a Demurrer to the Evidence,
Admitting All That the Evidence Proves.**

2. A motion for a nonsuit is in effect a demurrer to the evi-
dence, and admits all that the evidence proves or tends to prove.

**Trial—Whenever, in a Law Action, Competent Evidence Makes a
Prima Facie Showing, Motion for Nonsuit must be Denied.**

3. Whenever sufficient competent evidence is adduced, at the
trial of an action at law, to make a *prima facie* showing, the
court is required to deny a motion for nonsuit.

**Sales—Nonsuit in Action for Breach of Contract to Purchase Lum-
ber Held Error Where Plaintiff had Made Prima Facie Show-
ing.**

4. In an action for damages for breach by defendant of a
contract for the purchase of lumber taken over by defendant from
one who had entered into the contract with plaintiffs, it was error
to grant an involuntary nonsuit; plaintiffs' evidence making a *prima
facie* case.

**Trial—Motion by Both Parties for Directed Verdict in Action at
Law a Waiver of Right to Trial by Jury.**

5. In a civil case, when both parties to an action at law move
for a directed verdict, they waive their right to trial by jury, and
the trial court is required as a matter of law to decide whether
a verdict should be found for plaintiff or for defendant.

From Multnomah: ROBERT TUCKER, Judge.

Department 2.

This is an action for damages. The plaintiffs sue
upon a contract for the sale of lumber, entered into

---

1. Effect of request by both parties for direction of verdict,
see notes in 6 Ann. Cas. 545; 13 Ann. Cas. 372; Ann. Cas. 1913C,
1342.

by them with one J. W. Wilson. They aver that the contract involved herein was transferred by Wilson to the defendant corporation; that the corporation assumed all obligations, acquiesced in and ratified the terms and conditions thereof, and that the plaintiffs complied with and performed all the terms and conditions therein contained. They further aver that the defendant breached the contract by refusing to accept lumber shipments thereunder, and that plaintiffs were damaged on account of defendant's breach and were compelled to sell the lumber in the open market, at a loss of $1,472.30. Defendant claims that it was not a party to the contract sued upon, and that it did not in any way assume the obligations of J. W. Wilson thereunder.

At the conclusion of plaintiffs' testimony, the defendant moved for a nonsuit, which motion was overruled. At the close of the reception of all the evidence, the plaintiff moved for a directed verdict. The defendant made a like motion. The court refused to direct a verdict, but made an order granting an involuntary nonsuit in accordance with defendant's previous motion which had been denied and never renewed.

Both parties appeal to this court, plaintiffs asserting that the court erred in allowing defendant's motion for an involuntary nonsuit and in refusing to direct a verdict as requested by them. The defendant, appealing, asserts error of the court in denying its motion for a directed verdict and in making an order for involuntary nonsuit.

REVERSED AND REMANDED. REHEARING DENIED.

For appellants there was a brief over the names of *Messrs. Senn, Ekwall & Recken,* with an oral argument by *Mr. F. S. Senn.*

For respondent and cross-appellant there was a brief over the name of *Messrs. Platt & Platt, Montgomery & Fales*, with an oral argument by *Mr. Arthur D. Platt*.

BROWN, J.—This case presents no serious legal questions. The problems involved herein are problems of fact, and not of law. The law governing this case is well settled in this jurisdiction: *Baker* v. *Eglin*, 11 Or. 333 (8 Pac. 280); *Hughes* v. *Oregon Ry. & Nav. Co.*, 11 Or. 437 (5 Pac. 206); *Washburn* v. *Interstate Investment Co.*, 26 Or. 436 (36 Pac. 533, 38 Pac. 620); *Miles* v. *Bowers*, 49 Or. 429 (90 Pac. 905); *Corvallis & Alsea River R. Co.* v. *Portland E. & E. Ry. Co.*, 84 Or. 524 (163 Pac. 1173); *Davidson* v. *Madden*, 89 Or. 209 (173 Pac. 320); *The Home* v. *Selling*, 91 Or. 428 (179 Pac. 261, 21 A. L. R. 403); *Phez Co.* v. *Salem Fruit Union*, 103 Or. 514 (201 Pac. 222, 205 Pac. 970, 25 A. L. R. 1090).

A candid reading of the record relating the conduct of the various parties in the light of experience reveals nothing novel in human concerns. When lumber was high, the plaintiffs seem to have been quite willing that the contract in question should be canceled but the defendant herein was determined that it should be preserved and declared, "We have got to have this lumber; we have got to hold them to it," and the plaintiffs were held. However, when the price of lumber declined, the defendant would cancel, but the plaintiffs, in the meantime, were equally determined that the contract should be fulfilled to its very letter. Hence this lawsuit.

Plaintiffs' first assignment of error is grounded upon the ruling of the court in allowing defendant's motion for an involuntary nonsuit. The reason assigned for the nonsuit, as set forth in the motion,

was the alleged absence of testimony offered or received in the case to connect the defendant with the contract sued upon. Defendant contended that the contract which constituted the subject matter of the action was made between the plaintiffs and one J. W. Wilson, and that there was no testimony in the cause showing that the same had been assigned or transferred or that the defendant had assumed any or all of the obligations of the contract.

1. It is the duty of the court, in considering a motion for nonsuit, to resolve in favor of the plaintiff every legitimate inference that can arise from the evidence.

2. It is settled law in this state that a motion for a nonsuit is, in effect, a demurrer to the evidence, and that such a motion admits all that the evidence proves or tends to prove: *Brown* v. *Oregon Lbr. Co.,* 24 Or. 315, 317 (33 Pac. 557); *Collins* v. *United Brokers' Co.,* 99 Or. 556, 559, 560 (194 Pac. 458, 459); *Farrin* v. *Industrial Acc. Com.,* 104 Or. 452 (205 Pac. 984), and local citations there collected.

3. The jurors are the triers of fact, and whenever sufficient competent evidence is adduced at the trial of an action at law to make a *prima facie* showing, the court is required to deny a motion for nonsuit.

There was testimony in this case on the part of the plaintiffs that J. W. Wilson entered into a contract with plaintiffs on November 13, 1919, whereby the plaintiffs agreed to cut one and one-half million feet of lumber, of stated dimensions, and at an agreed price, f. o. b. cars, Klickitat, Washington, subject to 2 per cent discount for cash. The contract provided advances of $12 per M upon all lumber properly piled with cross-pieces, such piles of lumber to "become the property of and to be marked 'property of

the U. S. Lumber & Box Co.,' and are to be covered by a bill of sale for each and every pile."

J. W. Wilson, the purchaser of the lumber described in the foregoing contract, entered into an agreement with the defendant U. S. Lumber & Box Company, for the sale of lumber, and as a part of such agreement turned over to the defendant the contract hereinbefore referred to. The only writing offered in evidence containing the terms of the contract between J. W. Wilson and the defendant herein is a confirmatory letter written by the U. S. Lumber & Box Company to Wilson, reading, in part, as follows:

"Confirming the writer's various conversations with you: You are turning over to us your contract with Wilson & Hollenbeck of Liberty, Washington, for one and one-half million feet of two-inch lumber, which they are now manufacturing and will continue to manufacture continuously on this contract until such time as the contract has been entirely completed and will finish manufacture and shipment of same before May 31, 1920. * *

"Any stock which they fail to make shipment of you will manufacture at your own mill and ship."

Pursuant to the provisions of the contract entered into by the plaintiffs herein with J. W. Wilson on November 13, 1919, the plaintiffs shipped two cars of lumber, for which Wilson undertook to pay by a check which was not honored on account of "lack of sufficient funds." The plaintiffs notified Wilson that they intended to cancel the contract. He immediately journeyed to Portland and had a conference with the defendant corporation, through its lawful representatives. Wilson testified to the following conversation with the defendant's agents in Portland:

"Well, I told him that these men [plaintiffs] were trying to get out of this contract that we had with them and I was anxious to hold them to it, and so was he. Well, he says, 'They can't get out of it. * * We have got to hold them to it; we have got to have this lumber.' This was in January, the middle of January. * * He says, 'You will have to start suit against them and get them—

"The Court [Interrupting]: Just a minute. [After a pause.] Proceed.

"Q. Now, what was said about that matter by Mr. Sine [defendant's agent]?

"A. Mr. Sine said that they had to have this lumber that we had bought from the Wilson-Hollenbeck.

"Q. What lumber was that?

"A. This Wilson-Hollenbeck contract.

"Q. Yes.

"A. The contract that I had with Wilson-Hollenbeck. * * He said, 'We have got to have it and we will have it.' He says, 'You will have to go to Goldendale and get them into court and get something that will hold them; get an agreement.' So I did. I went to Goldendale and got an injunction against them, prohibiting them from shipping any of this other lumber, and—

"Q. [Interrupting.] Now, what was said by Mr. Sine in regard to the expense of this lawsuit that you were to have with Wilson & Hollenbeck?

"A. Well, what expense there was, why, he would take care of it.

"Q. The U. S. Lumber & Box?

"A. Yes."

Witness testified that he proceeded to Goldendale and instituted a suit, with the result that a temporary restraining order was issued against Wilson & Hollenbeck, enjoining them from shipping any lumber to anybody except the U. S. Lumber & Box. He testified:

"This suit was tried, and when we had this suit, why we had the first round, then came to another agreement,"

and that the contract was changed and provided for "getting a different kind of lumber"; that this change was made pursuant to the advice of the defendant in this action. He stated that—

Sine "suggested that we turn this original contract * * for two by fours and two by twelves dimension lumber, random lengths and random widths, * * and get this new contract whereby they would take orders; that is, rough timbers and rough cutting orders, that is, whatever they should specify. And I drew up an agreement with them to that effect, that we should designate what we would get, to a certain percentage."

The substitute contract provided, among other things:

"That whereas the above named parties have heretofore entered into an agreement of the date of November 13, 1919, in regard to the sale of lumber manufactured at the mill of the first parties in Klickitat County, Washington; and,

"Whereas, a controversy has arisen over the same;

"It is, therefore, now agreed between the parties hereto as follows, to-wit: That the said contract dated November 13, 1919, is considered canceled and the first parties now agree to cut for the second party one million five hundred thousand feet of lumber of the kind and quality known as #1 Common Fir * * .

"It is understood between the parties hereto that all lumber manufactured, except timbers, shall be at least ninety per cent. twenty feet or under in length, and that all timbers cut under this order shall be at least eighty per cent. twenty feet or under in length. It being agreed that the second party may designate the lengths of the lumber and timbers permitted to be over twenty feet, as well as dictating the lengths under twenty feet.

"Prices are to be $24.00 per M, f. o. b. Klickitat, Washington.

"Terms are to be cash, less two per cent, at time of shipment.

"Bills of lading, with sight drafts attached, to be presented to U. S. Lumber & Box Co., Gasco Building, Portland, Oregon, through Vancouver National Bank, of Vancouver, Washington. * *

"It is agreed that this order is in preference to any orders * * except * * eight cars above mentioned."

In response to a letter written by plaintiffs, the defendant replied, on March 25, 1920, as follows: "Gentlemen:

"Replying to yours of the 17th which should have been answered a day or two ago, in reference to draft on Car 141158, beg to say that we note carefully your assertion that you will not make any more shipments for this account until this draft has been paid.

"We want to say to you most kindly that we on this end are in nowise responsible for your papers and mail going astray. We are here to pay for the cars of stock in accordance with our orders and contract with you and whenever you turn over your invoices and bills of lading we are here ready to pay for them. * * "

On June 7, 1920, the U. S. Lumber & Box Company wrote Wilson & Hollenbeck at Liberty Bond, Washington, a letter in which they stated:

"As you understand, this contract was taken on by us from Mr. Wilson."

The price of lumber declined, and the defendant wrote a letter bearing date May 29, 1920, reading:

"J. W. Wilson,

"Liberty Bond, Washington.

"Gentlemen:

"Please refer to our order 4200–4284, and consider that the balance of this order be canceled ex-

cept of shipment of orders that you now have on your books to apply against this order. This, you understand, refers to the contract that was placed for the shipments from Wilson & Hollenbeck.

"We trust that this will be satisfactory to you, and that you will arrange with them to ship out the orders that are now on their books for stock that we have sold and cancel any balance that they may want to ship."

Wilson testified that he received this letter a number of days after it was written.

One of the plaintiffs, C. C. Wilson, testified as follows:

"Q. Mr. Wilson, there has been introduced in evidence here Defendant's Exhibit 3, referring to a cancellation or purported cancellation of certain features of this contract. I will ask you to state whether or not the lumber for which you are seeking to recover damages in this action was or was not all cut before May 31, 1920?

"A. Every stick of it. Every stick of it.

"Q. And was it cut on invoices?

"A. Orders, you mean?

"Q. On orders.

"A. Yes, sir, it was cut on orders, all that could be cut. There was a certain amount of it that was 'random' that didn't apply to the orders, but every piece that would apply to the order was cut just as close as we could cut it to the orders.

"Q. And all of it, as I understand it, was cut before May 31st?

"A. Yes, sir; every stick of it.

"Q. Under this contract in controversy here?

"A. Yes, sir.

"Q. And under orders and invoices received?

"A. Yes, sir.

"Q. From the U. S. Lumber & Box, through Jimmie Wilson?

"A. Yes, sir."

In the contract sued upon, the plaintiffs agreed to cut one and one-half million feet of lumber at a specified price. The contract provides for cutting orders, and for shipping, and for terms "at the time of shipment, bills of lading, with sight drafts attached, to be presented to U. S. Lumber & Box Company, Gasco Building, Portland, through Vancouver National Bank, of Vancouver, Washington."

The defendant's letters informed plaintiffs that it had taken over the contract, and that upon presentation of drafts, accompanied by bills of lading, it would pay for the lumber.

There is testimony to the effect that the plaintiffs did manufacture one million five hundred thousand feet of lumber in accordance with the provisions of the contract; that all cutting orders were furnished by the defendant to plaintiffs through J. W. Wilson; that the contract price of $24 per M, less 2 per cent discount for cash, was paid for the one million two hundred fifty thousand feet cut and delivered prior to the notice of cancellation. The obligations imposed by the contract upon J. W. Wilson were assumed and performed by the defendant herein without question up to and until the writing of the letter designated as "Defendant's Exhibit 3."

We have omitted evidence that tends to contradict some of the foregoing, our purpose being not to weigh the evidence, but to give a brief outline of the same for the purpose of ascertaining whether or not the plaintiffs' evidence made a *prima facie* case and constituted a bar to the involuntary nonsuit.

4. Now, treating the defendant's motion for a nonsuit as a demurrer to the evidence, and applying to it the rules that govern demurrers, and resolving in favor of the plaintiffs every reasonable inference

that may be drawn from the testimony, we hold that the court erred in granting an involuntary nonsuit.

The next question that presents itself is: Did the court err by refusing to direct a verdict for one party or the other?

5. This court is committed to the doctrine that in a civil case when both parties to an action at law move for a directed verdict, they waive their right to trial by jury, and the trial court is required, as a matter of law, to decide whether a verdict should be found for the plaintiff or for the defendant.

In the case of *First Nat. Bank* v. *Bach*, 98 Or. 332 (193 Pac. 1041), Mr. Justice BURNETT wrote:

"Both parties waived trial by jury by moving for a directed verdict. They thus submitted to the court whether as a matter of law a verdict should be directed for the plaintiff or for the defendant. Under such circumstances the court should have decided the question: *Patty* v. *Salem Flouring Mills Co.*, 53 Or. 350, 357 (96 Pac. 1106, 98 Pac. 521, 100 Pac. 298)."

For error in refusing to direct a verdict, the judgment is reversed and the case remanded for such further proceedings as may be necessary, not inconsistent with this opinion.

REVERSED AND REMANDED.   REHEARING DENIED.

McBRIDE, C. J., and BEAN and McCOURT, JJ., concur.