Argued at Pendleton October 28; affirmed December 3, 1935

# BLAKELEY ET AL. *v.* FIRST NATIONAL BANK OF THE DALLES

## (51 P. (2d) 1034)

656

*John Gavin*, of The Dalles, and *Edward J. Clark*, of Portland (Gavin & Gavin, of The Dalles, and Plowden Stott, of Portland, on the brief), for appellant.

*Francis V. Galloway*, of The Dalles, and *Nicholas Jaureguy*, of Portland (Galloway & Krier, of The Dalles, and Jaureguy & Tooze, of Portland, on the brief), for respondents.

CAMPBELL, C. J. This is an action to recover a sum of money that plaintiffs allege was deposited in the Wasco County Bank at The Dalles, Oregon, and which deposit defendant assumed and agreed to pay. Defendant denies that any sum was so deposited or that it ever agreed to pay the same. For a further answer, it alleges that said sum was embezzled by plaintiffs' own confidential clerk and that no such deposit had ever been made. The reply denied the new matter.

The cause was tried to a jury which returned a verdict for plaintiffs in the full amount claimed. Judgment was entered on the verdict. Defendant appeals.

For some years prior to June 15, 1927, there existed in The Dalles, Wasco county, Oregon, two banks— the First National Bank and the Wasco County Bank, a state bank. These institutions conceived that a consolidation would be a benefit to themselves as well as to the community served by them, so, after considerable negotiation, they affected a consolidation by the First National Bank assuming "deposit liabilities and took sufficient of their assets to indemnify us" of the Wasco County Bank. The negotiations leading up to the merger were conducted by the directors of each bank and their action made a part of their minutes.

For some time prior to April 19, 1927, the plaintiffs herein, as executors of the last will and testament of B. Wolf, deceased, had on deposit in the Wasco County Bank, in a commercial account, in excess of the sum of $6,000. On that date, one of the plaintiffs presented to one of the officers of said bank a check for said sum on the commercial account and requested that said sum be transferred and deposited in the savings account in said bank. On the same day, the bank, through the said officer, issued to the said plaintiff a savings account pass book, showing a deposit in the savings accounts of said bank in the sum of $6,000.

After the sale of the Wasco County Bank to the defendant bank herein, the latter issued a new savings account pass book to the plaintiffs showing a similar deposit in its savings accounts. Thereafter, plaintiffs from time to time made withdrawals from said savings account and had the interest computed and deposited. This condition continued for about five years, plaintiffs believing that they had a savings deposit and the bank treating their account in the same manner as that of all other depositors whose accounts had been taken over from the Wasco County Bank.

The Wasco County Bank had in its employ for considerable time, before the consolidation, as assistant cashier, a Mr. Sexton. Upon consolidation, he became an assistant cashier in the defendant bank. This man manipulated the books of each of the banks so as to conceal the true state of deposits in the books of either bank when they were being examined. When plaintiff Blakeley presented the check to the Wasco County Bank on the account of the Wolf estate, it was delivered to an officer of the bank other than Mr. Sexton. However, before the check was cleared through the checking account, Mr. Sexton got possession of it, and did not stamp it "paid" until April 27, 1927. At the time the national bank examiner made his examination of the books, preliminary to consolidation, Sexton withdrew from the loose leaf ledger, in which the account was kept, the ledger sheet showing the savings deposit of the Wolf estate; consequently it was not specifically listed as one of the liabilities assumed by the purchasing bank.

After the defendant bank took over the Wasco County Bank, Mr. Sexton became assistant cashier of the defendant bank, and remained in that capacity until June, 1932, when his embezzlement was discovered. It appears that his method of manipulating his accounts so that his shortages would not be discovered was: when an examination of the books was about to be made, he would abstract from the loose leaf ledger enough of the more inactive accounts to exactly balance his shortage; then when the examination was completed he would return them to their proper places. The record does not disclose when the shortage took place, but evidently some considerable time before the defendant bank bought the Wasco County Bank.

Sometime after Sexton's arrest, defendant bank informed plaintiffs that it was not indebted to them as Mr. Sexton had embezzled the money which had been deposited in the savings account of the Wasco County Bank. This is the money for which the action is brought.

The defendant contends that the court erred in submitting the cause to the jury and in not trying all the questions of fact and law itself.

At the close of all the evidence, the court requested counsel to "pass up your requested instructions". Thereupon, the respective attorneys made their arguments to the jury after which the court instructed the jury. The record does not disclose just when the requested instructions of respective counsel were passed to the court, but it is fair to presume that they were handed to the court immediately upon his request.

Plaintiffs handed up a list of 10 requested instructions, the first of which asked the court to direct a verdict in favor of plaintiffs for the amount prayed for in the complaint. Defendant handed the court a list of 14 requested instructions, the twelfth of which asked the court to direct a verdict in favor of defendant. The court did not so direct the jury. There were no formal motions for a directed verdict made by either party.

In *First National Bank v. Bach,* 98 Or. 332 (193 P. 1041), after all the evidence was in, both plaintiff and defendant moved for a directed verdict, which motions were denied and the cause submitted to the jury. Upon appeal the court's action in submitting the cause to the jury was assigned as error. This court held that though the trial court should have decided the question, still it was, in that case, a matter of small importance, since the judgment rendered was the proper result.

In *Wilson & Hollenbeck v. U. S. L. & B. Company,* 108 Or. 641 (215 P. 491), at the close of plaintiff's testimony defendant moved the court for a nonsuit, which motion was denied. At the conclusion of all the testimony, both plaintiff and defendant moved for a directed verdict. The court refused to grant either motion, but made an order granting an involuntary nonsuit in accordance with defendant's motion which had been made at the close of plaintiff's case in chief and had not been renewed. This court held that the trial court should have directed a verdict, and that the nonsuit was erroneously granted, and reversed the case.

In *Phipps v. Stancliff,* 118 Or. 32 (245 P. 508), both parties moved for a directed verdict. These motions were denied and the cause was submitted to the jury which returned a verdict in favor of defendant. This court held that:

"While the court may have been remiss in its duty, in failing to direct a verdict, no error can be predicated thereon, if there is any evidence to support the verdict rendered. The trial court, in effect, adopted the verdict of the jury and entered judgment accordingly. It accomplished indirectly what could have been done by directing a verdict for defendant. Plaintiff cannot complain where, as in the instant case, there is evidence supporting the verdict."

The above case cites *Banfield v. Crispen,* 111 Or. 388 (226 P. 235), and *Huddelson v. Sanders-Swafford Company,* 111 Or. 600 (227 P. 310).

In *Banfield v. Crispen,* supra, at the close of all the evidence, both parties moved for a directed verdict, which motions were denied, and the matter submitted to the jury which returned a verdict for plaintiffs. The action of the court in denying the motions and submitting the matter to the jury was assigned as error.

Mr. Justice BURNETT, in speaking for the court, declared the rule thus:

"It may also be said that although the court might have been remiss in the duty enjoined upon it by former decisions in failing to direct a verdict at the request of both parties, yet unless the party complaining here can point out that the verdict returned by the jury and adopted by the trial court in the rendition of its judgment was incompatible with the testimony and can thus put a finger on the actual error, the judgment cannot be overturned. The whole issue of both law and fact having been voluntarily submitted to the trial judge by both parties, it is plain that although in the first instance he had submitted the question of fact to the jury, yet being thus equipped with authority, he might, when the jury returned its verdict, have set it aside and directed them to render a contrary verdict. What actually occurred as depicted by the record is that the judge adopted the verdict returned by the jury as his own and incorporated it in the judgment rendered. It amounts to the same thing in the end as if he had mandatorily directed the jury to return a verdict for the plaintiffs. In short, while we have often sustained judgment rendered upon verdicts directed at the instance of both parties, we are not yet prepared to overturn a judgment circumstanced as the one in hand, where there is any testimony to sustain the verdict. In other words, the verdict in hand meets the test common to all verdicts whether directed or otherwise, that it must stand if there is any testimony to sustain it."

In *Huddelson v. Sanders-Swafford Company,* supra, the court held that where both parties moved for a directed verdict the court did not err in denying both motions and submitting the cause to the jury, but reversed the case on the ground that there was no evidence to sustain the verdict. The court cited *Banfield v. Crispen,* supra; *Patty v. Salem Flouring Mills,* 53 Or. 350 (96 P. 1106, 98 P. 251, 100 P. 298); *Rugh v. Soleim,* 92 Or. 329

(180 P. 930); *First National Bank v. Bach,* supra; *Fletcher v. Yates,* 105 Or. 680 (211 P. 179); *Tillamook County Bank v. International Lumber Company,* 106 Or. 339 (211 P. 183); and *Wilson & Hollenbeck v. U. S. L. & B. Company,* supra.

Thus, we come to the rule announced in *Olds v. Von der Hellen,* 127 Or. 276 (263 P. 907, 270 P. 497), in which Mr. Justice RAND stated:

"There is no question raised as to the procedure followed by the court in discharging the jury. This was in accordance with the rule which prevails in this state that where, in an action at law the plaintiff and the defendant each move for a directed verdict, the trial judge may discharge the jury and determine the issues of law and fact or he may permit the jury, under proper instructions, to determine the issues of fact and enter a judgment upon the verdict."

■ Whether we treat the requested instructions by plaintiffs and defendant as motions for a directed verdict, or simply as requests to instruct, it was not error for the court to submit the case to the jury, and adopt its findings by the entry of a judgment in accordance therewith if there is competent evidence to sustain the verdict.

■■ There can be no doubt that, when the officer of the Wasco County Bank accepted the check of plaintiffs, there was ample funds in the plaintiffs' account to cover the amount of the check, so that when the bank issued its savings account pass book showing that the bank had opened such savings account in favor of the plaintiffs, said account thereupon became established as a depositor's liability. The assistant cashier who cashed the check at the time of cashing the check was not acting for the plaintiffs in any capacity, but was acting for the bank, and the bank was responsible for his actions.

However, the real question presented by this case is the proper interpretation to be placed upon the contract or writings by which the First National Bank took over the assets and assumed the liabilities of the Wasco County Bank. This transaction is sometimes spoken of as a purchase, and at other times as a consolidation.

Before the purchase could be made, it was necessary for the First National Bank to obtain the consent of the comptroller of the currency. It therefore wrote the comptroller as follows on May 26, 1927:

"We have under consideration proposed purchase of the deposits of the Wasco County Bank located in The Dalles, Oregon. The basis of the consideration is that we accept their deposit liability and take sufficient of their assets to indemnify us, The state bank will go on and liquidate and we will accept no liability other than the depositors. Wil you kindly wire Mr. W. C. Crawley to make the examination preparatory to this consolidation."

The comptroller answered this letter under date of June 3, 1927, in which he acknowledged receipt thereof and suggested that Mr. Crawley would designate the assets that could be lawfully acquired by the defendant bank.

On June 7, 1927, the directors of the defendant bank again wrote the comptroller of the currency a letter in which they stated:

"We, the undersigned, directors of the First National Bank of The Dalles, Oregon, desire to assume the liabilities, other than those to shareholders, of the Wasco County Bank of The Dalles, Oregon, and to purchase a sufficient amount of assets, which will be approved by your examiner. Examiner W. C. Crawley has made an examination of the assets of the above mentioned state bank as of June 6, 1927, and has informed us that the following assets can not be acquired by the First National Bank:"

The directors of the Wasco County Bank held a meeting on June 10, 1927, the minutes of which recite that negotiations had been carried on between the two banks and that the defendant bank had adopted a resolution:

"It was stated that the purpose of the meeting was to consider the sale of the assets of the Wasco County Bank to The First National Bank of The Dalles, Oregon, in accordance with the negotiations heretofore had between the said banks, and the said The First National Bank, having duly adopted a resolution wherein it agreed to assume all the deposit liabilities of the Wasco County Bank, approximating $575,000, and to purchase the assets of said bank consisting of cash, bonds and stock in Federal Reserve Bank and other items, the balance of said purchase price to be ascertained and taken from the bills receivable of the said Wasco County Bank as shown by the books of said bank on the 11th day of June, 1927, and that it had been favorably agreed upon between the officials and stockholders of each of said banks that said sale should be made by the said Wasco County Bank and said purchase made by The First National Bank, whereupon the following resolution was duly offered and, upon a vote being taken thereon, declared unanimously adopted:

'Whereas, owing to the duplication of the business and cost of labor necessary to carrying on of two separate banking institutions in this locality and the saving that would necessarily arise by the consolidation of the said banks; and

'Whereas, The First National Bank of The Dalles, Oregon, has offered to purchase the assets of the Wasco County Bank and assume deposit liabilities of the said Wasco County Bank, amounting approximately $575,-000, and to purchase from the said Wasco County Bank assets consisting of cash, bonds, stock in Federal Reserve in like amount, and the balance thereof to be ascertained and taken from the bills receivable as shown by the books of the said Wasco County Bank; and

'Whereas, the stockholders of the said Wasco County Bank have purchased and are now the owners of one-fifth of the capital stock of the First National Bank, and it is deemed to the best interest of the stockholders of both institutions and to the people at large that said sale be made to the First National Bank by the said Wasco County Bank, and the said Wasco County Bank so dispose of its assets, Now, therefore,

Be It Resolved, That the Board of Directors of the Wasco County Bank does hereby agree to sell, assign and transfer to the First National Bank of The Dalles, Oregon, all of its cash, bonds, stock in Federal Reserve, and other assets except such as may be objected to by the State Superintendent of Banks or the Comptroller of the Currency, and to assume in consideration thereof deposit liabilities of said Wasco County Bank in the approximate sum of $575,000, said assets to be purchased and to consist of cash, bonds, stock in Federal Reserve and the balance of said purchase price to be ascertained and taken from the bills receivable now shown by the books and records of said Wasco County Bank, and the Board of Directors of the said Wasco County Bank does hereby authorize and instruct the officers of said bank to so transfer, sell and assign said assets to The First National Bank, and said officers are further hereby authorized and instructed to endorse notes, execute bills of sale, assignment of mortgages, and to do any and all acts necessary or convenient for the purpose of executing the transfer of assets and deposit liabilities for the Wasco County Bank to The First National Bank, as above outlined. The officers are further instructed to submit to the Supt. of Banks of the State of Oregon, the proposal of the transfer of assets and liabilities as set forth in this resolution and to obtain his approval.' "

On June 13, 1927, the board of directors of the defendant bank held a meeting, the minutes of which are as follows:

"It was stated that the purpose of the meeting was to consider the purchase of the Wasco County Bank,

a state Bank of the State of Oregon, in accordance with the negotiations heretofore had between the First National Bank and the said Wasco County Bank, and as a consideration therefor to assume all deposit liabilities of the said Wasco County Bank, approximating $575,-000, and to purchase assets consisting of cash, bonds, stock in Federal Reserve, and other items and the balance of said purchase price to be ascertained and taken from the bills receivable of the said Wasco County Bank as shown by the books of said bank on the 11th day of June, 1927; and that it had been favorably agreed upon between the officials of said bank and its directors that such purchase should be made, and The First National Bank assume said liabilities, the following resolution was duly offered and, upon a vote being taken thereon, declared unanimously adopted;

Whereas, owing to the duplication of the business and labor necessary to the carrying on of two separate banking institutions in this locality and the saving that would necessarily arise by the consolidation of the said Wasco County Bank and the First National Bank; and

Whereas, the First National Bank of The Dalles, Oregon, has offered to purchase the assets of the Wasco County Bank and assume deposit liabilities, of the said Wasco County Bank amounting to approximately $575,000, and to purchase assets in like amount consisting of cash, bonds, stock in Federal Reserve, and the balance thereof to be ascertained and taken from the bills receivable of the said Wasco County Bank; and

Whereas, the stockholders of the said Wasco County Bank have purchased one-fifth of the capital stock of the First National Bank and it is deemed to the best interests of the stockholders of both institutions and to the public at large that said purchase be made by said The First National Bank and the said Wasco County Bank so dispose of its assets: Now, therefore

Be It Resolved, That the Board of Directors of the First National Bank of The Dalles, Oregon, hereby authorize and instruct the officers of the said The First National Bank to purchase from said Wasco County

Bank of The Dalles, Wasco County, Oregon, all of its cash, bonds, stock in Federal Reserve, and to assume deposit liabilities of said Wasco County Bank in the approximate sum of $575,000, but not to assume any stockholder's liabilities of any nature, and to purchase from said Wasco County Bank assets therein in a like amount consisting of cash, bonds, stock in Federal Reserve, and the balance of the purchase price to be ascertained and taken from the bills receivable now shown by the books and records of said Wasco County bank; and

Be It Further Resolved, That The First National Bank of The Dalles, Oregon, does hereby assume all liabilities of the Wasco County Bank of The Dalles, Wasco County, Oregon, as shown by its books on the 11th day of June, 1927, except that The First National Bank of The Dalles, Oregon, does not and will not assume any stockholder's liability or the liability of any kind or nature of the stockholders therein, and that any assets which may be purchased or otherwise acquired by The First National Bank of The Dalles, Oregon, shall not include real estate stocks and loans secured by real estate except such as are permitted by Section 24 of the Federal Reserve Act, nor any loan in excess of the limit prescribed by Section 5200 U. S. R. S., as amended.''

It appears that the comptroller of the currency, when notified of the actions of the directors of each bank, approved their action as follows:

''Receipt is acknowledged, through National Bank Examiner, W. C. Crawley, of your letter dated June 7, agreeing that in your proposed purchase of the Wasco County Bank of The Dalles, Oregon, and the assumption of its liabilities, you will not take over certain objectionable assets, amounting to $115,419.06, nor any other assets that will be unlawful for you as a national bank.

''As soon as the purchase has been completed, please forward to this office a copy of the contract entered into between the two banks.''

. The sale of the Wasco County Bank was approved by the superintendent of banks of the state of Oregon as follows:

. "This is to advise you that in conformity with the conference between yourself and the undersigned, and between Mr. Hickok and your Board of Directors, the proposed sale of assets and transfer of all deposit liabilities of the Wasco County Bank of The Dalles is approved.

"Upon completion of the records of the transfer please submit, for our files, copies of the resolutions adopted by the Board of Directors of the two institutions and copies of the schedules of assets and liabilities of the Wasco County Bank as of the date of the transfer, also please surrender to this office for cancellation the Charter of the Wasco County Bank."

The proceedings indicated by the letters and minutes, above quoted, clearly show the intention on the part of both the buyer and seller. The defendant bank intended to and did buy all the assets of the Wasco County Bank that the comptroller of the currency would permit it to take and "to assume all liabilities of the Wasco County Bank of The Dalles, Wasco County, Oregon, as shown by its books on the 11th day of June, 1927", except the liabilities of the stockholders. The savings account of the plaintiffs was shown on the books of the Wasco County Bank on June 11, 1927, as a "deposit liability". The mere fact that the cashier of the said bank had possession of the ledger sheet showing the account of plaintiffs and some others, on said date, made it none the less the book of the Wasco County Bank. Juggling the ledger sheets of the savings accounts did not relieve the bank of the liability. In assuming control over the plaintiffs' deposits, issuing a new pass book, computing interest on the pass book, and permitting withdrawals from said

account to be made, considerable time after the account was taken over, clearly shows an assumption of the liability.

■ Defendant contends that the statute of limitation had run against plaintiffs' claim. Holding as we do that plaintiffs' claim was a deposit liability, assumed by defendant, the statute would not begin to run until the plaintiffs' demand for the deposit had been refused: *Haines v. First National Bank of Roseburg*, 89 Or. 42 (172 P. 505).

■ Mr. Hoesch was called as a witness by defendant and he was shown a list of the savings depositors, a list of the commercial accounts, and a list of the time deposits. He testified that he was vice president of the Wasco County Bank at the time of the sale and that these lists were made up by some of the help in the bank most likely under his supervision and were furnished to the banking department of the state of Oregon at the time of the sale. Mr. Schramm, the state superintendent of banks, was also called as a witness for defendant. While on the stand he was shown the same lists which he identified as having been sent to him by the Wasco County Bank at the time of the sale of that institution to the First National Bank. The witness knew nothing of how or who prepared the lists. These lists were then offered in evidence and an objection by plaintiff to their receipt was sustained and this ruling of the court is assigned as error.

It is difficult to see just how these lists were material. So far as the record shows, the lists may have been made up by the man who embezzled the money, and in no event could they be binding on the plaintiffs. It was not error for the court to refuse their admission.

■ The state superintendent of banks was asked: "Q. Do you, in the discharge of your duties, ever

approve the assumption by a purchasing bank of an embezzlement liability, or a liability for a non-existent deposit or liability in the selling bank by the purchasing bank?" The court sustained an objection to the question, which ruling is assigned as error.

It is equivalent to asking the bank superintendent if he was honest in the discharge of his duties. Naturally there would be but one answer, but that answer would not be competent evidence to prove any issue in the instant case.

There are other alleged errors, all of which we have carefully examined but deem it unnecessary to pass upon them at this time, the main question being as to the interpretation of the contract between the two banks. There is competent evidence to sustain the verdict and the court did not err in entering judgment thereon.

The judgment is affirmed.

ROSSMAN, BELT and BAILEY, JJ., not sitting.